## ALBERT KRENZ v. KRENZ OIL COMPANY AND ANOTHER.[1]

June 10, 1932.

No. 28,923.

*Ernest F. Jacobson* and *Daniel P. Kennedy*, for relators.
*Mark F. Crotty*, for respondent.

[1]Reported in 243 N. W. 108.

HOLT, J.

Certiorari to review a decision of the industrial commission awarding respondent compensation.

The facts are in the main undisputed. Respondent was in the employ of relator Krenz Oil Company installing gas pumps and storage tanks for filling stations, and on May 7, 1929, arrived at Delano, a little after one p. m. where three other men were engaged in putting down two tanks at a gasolene station. The tanks, weighing something over 400 pounds each, had been placed side by side in a pit five feet deep. Each tank was about three and one-half feet in diameter. The filling pipe attached to one of the tanks did not stand straight, and respondent went into the pit and attempted to lift and twist the tank so as to have the pipe perpendicular. The three other workmen noticed that as he got through with the lifting his face became distorted. He crawled out of the pit and was led to a place where he could sit down, but at once collapsed and was carried unconscious to a doctor's office and then to his home. After eight or ten days he had recovered so as to be able to sit up. His left side was partially paralyzed. His memory slowly returned, and now with some difficulty he can be about. The industrial commission found that he was totally disabled for 17 weeks, or until September 2, 1929, and since that date has been in a partially disabled condition.

There is no specific assignment of error challenging any finding of fact; but, as we understand the argument in the brief, it is directed against the second finding, viz:

"That while so employed said employe suffered an accidental injury to his person and that the accident which occasioned this injury arose out of and in the course of his employment with the above named employer."

The medical experts agree that respondent sustained a brain injury on May 7, 1929, which caused the disability. But in the opinion of relators' experts the lifting may not have caused it. One of them, while admitting that a lifting strain does increase the pressure upon the arteries in the brain and might break through weak

walls, thought this more likely to be a case of thrombosis, where a blood vessel, particularly at a branch, thickens so as to cut off the blood supply to a part of the brain, thus causing paralysis. In regard to its being a case of miliary aneurism, as diagnosed by respondent's medical experts, he said:

"It is a possible diagnosis, I should say, it was an improbable diagnosis but a possible diagnosis, impossible just from the viewpoint of rarity."

The other two medical experts did not venture any positive opinions as to what caused the paralysis. Each of the four experts of respondent gave the opinion that the strain of the lifting caused the break in the walls of the blood vessels of the brain, producing the paralysis or disability. One of these experts, after dwelling on the fact that respondent was young and healthy, that the arteries of the brain contain no vasoconstrictors as they do in all other parts of the body except the lungs, and hence over-exertion manifests itself in raised blood pressure in the brain more than in other parts of the body where there is automatic control of the pressure in the arteries, gave this explanation:

"What happened down in that pit is this, that this man in lifting raised his blood pressure, that he had in the arteries of his brain a so-called miliary aneurism, a little place where the vessel wall was weak, and that it blew out and that hemorrhage, the suddenness, the quickness with which it came on, almost instantly following that effort, strengthens that opinion, that this has gradually absorbed and he has made improvement to the point that he has reached today."

With these persuasive reasons for an opinion, concurred in by three other doctors and opposed by only one doctor, who frankly admits that in rare cases the lifting might cause a break if miliary aneurism exists, there is no real merit to an attack upon the quoted finding. There was here such almost instantaneous connection between the exertion in the employment and the collapse that even a layman might rightly conclude, without the aid of medical opinion,

that the exertion ruptured a blood vessel in the brain. A case very close on the facts is State ex rel. Puhlmann v. District Court, 137 Minn. 30, 162 N. W. 678. See also State ex rel. Simmers v. District Court, 137 Minn. 318, 163 N. W. 667; Muetzel v. Muetzel, 169 Minn. 360, 211 N. W. 320; Bauman v. Roth Downs Mfg. Co. 177 Minn. 98, 224 N. W. 459. Clay v. New York L. Ins. Co. 183 Minn. 275, 236 N. W. 305, is not a workmen's compensation case but illustrates that some untoward act in the employment or work may cause a rupture of a blood vessel in the brain of a strong, healthy man.

Relators cite several decisions from other jurisdictions. All have been examined but are so different from the case at bar on the facts and the applicable legal principles to the facts that it would serve no useful purpose to refer to them here.

Relators also make the point that this proceeding was not brought within time. No defense of that sort was presented to the industrial commission. The record is not clear as to whether the employer is a person or a corporation, but the inference is that respondent's brother, Fred Krenz, does business under the name of Krenz Oil Company. Fred Krenz lived at St. Bonifacius, where respondent lived, and Fred Krenz undoubtedly knew of the accident immediately after it took place, so that notice to the employer was not indispensable. Nor does it appear that the employer set the two-year limitation running by filing the notice with the industrial commission that would bar this proceeding. G. S. 1923 (1 Mason, 1927) §§ 4282(1) and 4293.

The writ is quashed and the decision stands affirmed, with $100 attorney's fees to be taxed in favor of respondent in this court.