# MARY B. FARRELL v. M. C. RAGATZ & SONS COMPANY AND ANOTHER.[1]

October 13, 1933.

No. 29,521.

*Merriam & Wright,* for relators.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondent.

*HILTON, Justice.*

Certiorari to review the order of the industrial commission award ing compensation for the death of petitioner's husband, John R. Farrell, alleged to have been accidentally caused while in the employ of M. C. Ragatz & Sons Company, relator. The Public Indemnity Company was the insurer.

On October 21, 1932, Farrell, while in the employ of relator, went from Wadena, Minnesota, to Henning, Minnesota, to purchase potatoes for the relator. He interviewed one Traub, who was operating a gasolene filling station at Henning and who was also a dealer in potatoes. Traub had for sale a loaded car of potatoes standing on a sidetrack at Henning. After examining the potatoes, Farrell returned to the filling station and there made a deal to purchase them. This was about 12:30 p. m. of that day, at which time a freight train was nearly due at the station. Farrell called up the

[1]Reported in 250 N. W. 454.

railway agent and requested him to remain at the depot, stating that he would be right over for a bill of lading on the car. He then started on a trot for the depot (faster than a walk). The depot and filling station were more than a city block apart. When Farrell reached the depot he was "out of breath" and was breathing hard. He at once sat down in a chair. When the bill of lading was ready Farrell, still out of breath and shaking, signed it, but in the wrong place. The approaching train was then near the depot. Farrell then got up and went out of the office, stopped 15 or 18 feet therefrom, and leaned against a door. The depot agent spoke to him but received no answer. Farrell climbed a ladder on the car and assisted in opening one of the vents that was sticking. When the car was attached to the train Farrell returned to Traub's office and gave a check for the potatoes. He was quiet and not as talkative as usual. He then started for his hotel at Wadena, about 20 miles away. He had much difficulty in driving his car, on account of the severe pain that he was in. He arrived at the hotel at about 1:30 p. m. and there complained of not feeling well and seemed to be having pain. He went to a room on the second floor and while in his room called for help. The hotel clerk went to the room, found Farrell holding his chest and in much pain. Dr. Grogan was called. He found Farrell kneeling by the bedside very pale and sweating profusely, in agonizing pain, and holding onto his chest. Farrell answered questions with difficulty. Dr. Grogan administered a number of sedatives, including morphine and chloroform, staying with him two and a half or three hours. Farrell was taken to the hospital the next morning, where he remained for six days. He then returned to the hotel. He was still looking worn and weak and was given a room on the ground floor. After staying at the hotel two or three days he was taken to his home in St. Paul in an automobile, arriving October 30, where he remained until November 5, when he died. His death was caused by pulmonary embolism resulting from a coronary thrombosis.

There was satisfactory evidence of the exertion made by Farrell in his hurried trip to the depot and his work about the car. Four

doctors were witnesses at the hearing, three on behalf of petitioner and one for relator. They all agreed that exertion is a cause of coronary thrombosis and also of pulmonary embolism. The medical witnesses for the petitioner were Dr. Grogan, who attended Farrell at Wadena, Dr. Rutherford, his family physician, who attended him on his return to St. Paul, and the third, a recognized internal medicine authority, as was also the medical witness for relators. The case was ably conducted on both sides and, as is customary, was one in which there was a divergence in some of the medical opinions. A recital of the expert testimony is not necessary. The three doctors for petitioner gave as their opinion that Farrell's death resulted from his exertions at Henning on October 21. The physician for relator took the opposite view. He, however, frankly admitted that there was a possibility that it so resulted, but he did not think it probable. A fact issue was here presented. The conclusion of the commission, that death resulted from the exertions on October 21 in the course of decedent's employment, having sufficient support in the evidence, must be sustained. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426. Farrell's death was due to an accidental injury and hence compensable. See Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; Wicks v. Northland M. & I. C. Co. 184 Minn. 540, 239 N. W. 614; Strommen v. Prudential Ins. Co. 187 Minn. 381, 245 N. W. 632.

An attorney's fee of $100 is allowed in this court.

Affirmed.