New Jersey Department of Labor,
Workmen's Compensation Bureau.

ABRAHAM HERTZBERG, PETITIONER, v. KAPO DYEING AND PRINTING CO., RESPONDENT.

Decided January 6, 1941.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *George E. Meredith* (*Walter W. Hubley*, of counsel).

\*　　\*　　\*　　\*　　\*　　\*　　\*

The petitioner was regularly employed by the respondent as production manager of its dyeing and printing plant at Haledon, New Jersey. His weekly wages were fixed at the rate of $75, and his duties, while dealing primarily with production over which he had full and complete charge, required him, among other things, to expedite all special rush orders. It so happened that on the morning of March 9th, 1939, the petitioner was fulfilling a special rush order for one of its important New York customers, Ciro Fabrics, Inc., which order had been promised for ten o'clock delivery by Ciro's motor truck. However, when the Ciro truck arrived at the

respondent's plant at the appointed hour, the said order was not quite ready, and amid much confusion and excitement on behalf of the petitioner and in an effort to prevent any unnecessary delay, Hertzberg grasped the particular roll of silk as it came from the machine, and, holding it upright against his chest, proceeded to carry it to a nearby elevator whence it was to be taken to an upper floor for further processing. While the precise weight of the roll is not known —various witnesses estimating its weight from 25 pounds to 125 pounds—I am satisfied it was of considerable weight, weighing approximately 75 pounds. After walking only a few feet in the direction of the elevator, he was seized with severe pains in the region of the heart, chest and shoulder blades, and upon reaching the elevator, he was compelled to drop the roll because of the said pains and general weakness. A moment or so later he collapsed, followed by a short period of unconsciousness and complete prostration. Several co-employes, working nearby, came to his assistance and carried him to an outer office where, after being revived, he rested for nearly three-quarters of an hour, although to all observers, he appeared pale, weak and acutely ill. He was thereupon taken home in an automobile of a company official; and upon his arrival there he was put to bed and was treated by Dr. Morris S. Joelson. On examination the doctor found petitioner pale and cyanotic, with a weak pulse and weak heart sounds, complaining of pain in the region of his heart, which pain seemed to radiate to the left arm; in general he appeared weak and gravely ill, with a blood pressure of 108/66. Dr. Joelson diagnosed the condition as one of coronary occlusion or coronary thrombosis, and prescribed rest and hypo-injections as the mode of treatment. The petitioner was confined in bed at his home for five weeks, receiving daily treatment by Dr. Joelson, and was thereafter removed to the Barnert Hospital, Paterson, New Jersey, where he remained a patient for four weeks under the care of the said physician. He was first able to leave his home for short convalescent walks during the early part of June, 1939, and was able to resume light clerical duties about the middle of December, 1939. At the present time he suffers from general debility and weakness,

cardial pains, and pains in shoulder blades, becoming fatigued and tired upon the slightest form of exertion.

A decision in this case rests upon the determination of two main questions, to wit: (1) Has the petitioner sustained the burden of establishing proof of an accident arising out of and in the course of employment, and if so, (2) has the said accident caused a personal injury resulting in permanent cardiac impairment?

The first question, obviously, must be resolved in favor of the petitioner. Since our act is a remedial statute which must be construed liberally in order to carry out its beneficent purposes, the popular and ordinary definition of the word "accident," and not the stricter definition used in construing health and accident insurance policies, is to be used in compensation cases.

\*     \*     \*     \*     \*     \*     \*

In *Zappala* v. *Industrial Accident Commission,* 82 *Wash.* 314; 144 *Pac. Rep.* 54, Judge Morris placed injuries by strain on the same footing as injuries by direct force when he stated: "To hold with the commission that, if a machine breaks, any resulting injury to a workman is within the act, but, if the man breaks, any resulting injury is not within the act, is too refined to come within the policy of the act as announced by the legislature in its adoption and the language of the court in its interpretation. The machine and the man are within the same class as producing causes, and any injury resulting from the sudden giving way of one, while used as part of any industry within the act, is as much within the contemplation of the act as the other."

To a similar effect, in a case arising under the British act upon which our act is patterned, it was held that an internal injury caused to a person in a normal state of health was a fortuitous and unforeseen event, where the workman suddenly tore several fibres of the muscles of his back while lifting a heavy beam. *Boardman* v. *Whitworth,* 3 *W. C. C.* 33. The court's reasoning is succinctly stated as follows: "To me it is the same as if he (workman) had been using a rope strong enough for the purpose, and by overstrain or sudden jerk the rope had snapped and the beam had fallen upon him. That

would be an accident. In one case the work is done by a rope; in the other, by a set of muscles. In each case the machinery is normally fit for the work, but the unexpected happens, the rope or muscle snaps and there is an accident. To my thinking, there is in the word "accident" always an element of injury." *Boardman* v. *Whitworth, supra.*

So under our own act, in *VanMeter* v. *E. R. Morehouse, Inc.,* 13 *N. J. Mis. R.* 558; 179 *Atl. Rep.* 678, a sprain of a back which started up an old arthritic condition, suffered by a farm laborer while clearing the field by pulling out weeds and bushes, was held to be a compensable "accident" arising out of and in the course of employment. Mr. Justice Bodine speaking for the Supreme Court, stated: "A sprain of the back, and such it was pronounced by competent medical opinion, is obviously an accident, and as it arose out of and in the course of the employment, the prosecutor was entitled to compensation. This is not a case where the result was accidental but otherwise the means. *Lawrence* v. *Massachusetts Bonding Co.,* 113 *N. J. L.* 265; 174 *Atl. Rep.* 226. Had the employe broken his leg or sprained an ankle while at work, it clearly would have been called an accident. A sprain of the back falls in the same category. * * *"

*Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832, extends the principle of strain to cases involving the heart, holding that an accidental strain of one's heart, even though the heart was previously weakened by disease, is a compensable injury.

In *Rother* v. *Merchants Refrigerating Co.,* 122 *N. J. L.* 347; 6 *Atl. Rep.* (2d) 404, compensation was allowed for the death of an employe who had been afflicted with heart trouble for several years and who died during the first hour of work unloading a freight car containing crates of oranges and while placing crates, weighing sixty to eighty-five pounds, on a hand truck. * * *

And in the very recent case of *Geltman* v. *Reliable Linen Supply Co.,* 18 *N. J. Mis. R.* 423; 13 *Atl. Rep.* (2d) 844, death of an employe who was driving an automobile in the performance of his duties as a salesman for his employer, and who became involved in a heated altercation with another

motorist over a traffic incident, was held to be the result of a compensable "personal injury" by "accident." Deputy Commissioner Medinets, in a well reasoned opinion, amplified the rule by stating: "It is not essential that there be a physical injury. The Workmen's Compensation act imposes no such requirement. The clearly expressed legislative intent is to provide compensation when disability results from "personal injuries" suffered by accident arising out of and in the course of the services required by the contract of employment. A mental, emotional or nervous shock has been held to be a direct injury for which compensation was properly awarded. *Hall* v. *Doremus,* 12 *N. J. Mis. R.* 319; 171 *Atl. Rep.* 78; affirmed in 114 *N. J. L.* 47; 175 *Atl. Rep.* 369. So here, the extreme emotional excitement ensuing from the traffic incident which precipitated an acute anoxemia and resulted in the instantaneous death of the employe, is a "personal injury" by accident, as contemplated by the statute."

Thus viewed in the light of these decisions, the present case, it would appear, comes squarely within the rule enunciated therein. * * * I am satisfied, too, that the proofs here meet the test recently applied by Mr. Justice Perskie, speaking for the Court of Errors and Appeals in *Ciocca* v. *National Sugar Refining Co.,* 124 *N. J. L.* 329; 12 *Atl. Rep.* (2d) 130, holding: "A compensable accident arises out of the employment when the proofs show (1) that the employment was one of the contributing causes without which the accident would not have happened, and (2) that the accident was one of the contributing causes without which the injury or death would not have resulted. *Fuferi* v. *Pennsylvania Railroad Co.,* 117 *N. J. L.* 508; 189 *Atl. Rep.* 126. * * *"

In passing upon the second and equally vital question, as to whether or not the said accident caused a "personal injury" resulting in permanent cardiac impairment, considerable medical testimony was adduced by both petitioner and respondent, much of which contained a definite contrariety of opinion.

From the undisputed evidence, it appears that Hertzberg for many years enjoyed health somewhat below par, having undergone several surgical operations during the past decade, consisting of an appendectomy, herniatomy and an operation

for removal of his gall bladder. It also appears from the evidence that prior to the said accident, the petitioner, although unaware of the fact, suffered from a moderately advanced vascular disease, known as arteriosclerosis, with certain sclerotic changes in his coronary arteries; that the trauma or injury as a consequence of the accident consisted of a strain, by reason of a sudden and transitory rise in the blood pressure, superimposed upon these weakened vessels; and that as a result thereof these already diseased vessels were exposed to further insult and alteration. However, it is a fundamental principle under this broad and remedial statute that the employer takes the employe subject to his physical condition when he enters his employment. Compensation losses are not made solely for the protection of employes in normal physical condition, but for those also who are subnormal. The rule has been aptly stated by Mr. Justice Perskie in *Bernstein Furniture Co.* v. *Kelly, supra,* that "until such time as it may be provided to the contrary, by proper authority, the beneficent provisions of the act must and shall be extended alike to the weak and sick as well as to the strong and able, so long as those of either class, coming under the provisions of the act, sustain a compensable accident."

To warrant a recovery under the act, it is not necessary that the injury flowing from the accident be the primary cause in initiating the disability; the requirements of the statute are satisfied if, from the evidence, it appears that the said injury, acting as an exciting or provocative cause, aggravates a pre-existing diseased condition, and thereby contributes in hastening its culmination in disability or death. *Voorhees* v. *Smith Schoonmaker,* 86 *N. J. L.* 500; 92 *Atl. Rep.* 280; *Winter* v. *Atkinson Frizelle,* 68 *N. J. L.* 401; 96 *Atl. Rep.* 360; *Lundy* v. *George Brown & Co.,* 93 *N. J. L.* 107; 108 *Atl. Rep.* 252, and *Geizel* v. *Regina Co.,* 96 *N. J. L.* 31; 114 *Atl. Rep.* 328.

\*        \*        \*        \*        \*        \*        \*

Much time was consumed at the trial on the subject of whether or not coronary thrombosis or occlusion is ever the result of trauma, disclosing that there exists a radical difference of opinion between the so-called medical authorities. It developed from the evidence that there are two separate

and distinct schools of thought; the one, sponsored by Dr. Ernst B. Boas, holding that there is a direct causal relation between trauma (strain and physical exertion) and the development of a coronary occlusion; and the other, championed by Dr. Arthur Masters, adopting the opposite view.

Conceding, therefore, that the petitioner in the present case suffered from a predisposing condition, to wit, arteriosclerosis of his coronary vessels, the controlling question dispositive of the case is whether the injury was the exciting cause in setting up or contributing to a coronary occlusion at the time of his collapse, or whether the coronary occlusion was the natural result of the disease (arteriosclerosis) alone, progressing in its normal course and eventually leading to an ultimate closure of one of the branches of the coronary artery.

Dr. Morris S. Joelson, the treating physician, Dr. J. Allen Yager, a cardiologist, and Dr. Ernst B. Boas, a highly recognized specialist in diseases of the heart, testified in behalf of the petitioner and expressed the opinion that there was a definite causal connection between the trauma and the coronary occlusion. * * * They further stated in their testimony that the petitioner was suffering from the residual effects of a coronary occlusion, notwithstanding that the electro-cardiographs were negative—a not uncommon incident in cases of coronary disease because of the many silent areas in the heart; and that the permanent impairment or damage to the heart, in their opinion, produced a disability, ranging from fifty to seventy-five per cent. of the total.

On the other hand, Dr. Aaron Parsonnet, a specialist in cardiology, Dr. Francis R. Meyers, a cardiologist, and Dr. Andrew C. Ruoff, a specialist in the diagnosis and treatment of traumatic injuries, appeared in behalf of the respondent and testified, in substance, diametrically opposite to the views expressed by the petitioner's medical experts. They testified that in their opinions the petitioner never suffered an attack of coronary thrombosis; nor is he suffering at the present time from the residual effects of such a condition; and that negative electro-cardiographs are confirmatory in ruling out such condition. * * *

There is thus presented for determination a closely balanced question of fact involving the conflicting views of the medical

experts of the respective parties. I am not unmindful that I am placed in the very difficult position of having to decide a rather technical question of medicine which has to some extent baffled the efforts of the leading medical authorities. The issue, however, is not whether certain medical authorities accept or reject trauma as a competent cause in the development of coronary occlusion; but rather, the question is whether there is in this case sufficient evidence to conclude that the petitioner suffered from a coronary occlusion and whether the said accident was an excitatory and contributing factor in its development; and I am satisfied that there is ample support in the evidence to sustain such conclusion. By the greater weight of the evidence, I am unable to perceive why the medical testimony which finds no causal connection between the accident and petitioner's present disability should predominate over the testimony of equally competent medical experts (one of whom was the treating physician) who have no hesitancy in determining that the accident of March 9th, 1939, did in fact cause or precipitate a coronary thrombosis with resulting cardiac impairment. Neither can I disregard the testimony of the petitioner and his wife to the effect that prior to the day of the accident, he was free of cardiac symptoms and had never suffered any previous coronary attacks; and that since the accident there has been noted and detected a marked and decided decline in health, characterized by general weakness; recurrent cardial pains, pains in shoulder blades, and physical distress on exertion. Considering the sclerotic condition of the petitioner's coronary vessels, it hardly requires the testimony of medical experts to establish that his coronary attack and collapse could have been, and, indeed, in all probability was precipitated by the degree of physical strain and exertion required by his work on the morning in question. True, he could have suffered such an attack in bed or during rest at home. But he did not experience such an attack in bed nor during a period of relaxation away from his job. The evidence points definitely to the fact that he was so stricken while engaged in the work of his employer at a task which subjected his heart and the coronary vessels to a strain beyond their capacity to withstand.

\*      \*      \*      \*      \*      \*      \*

A search of the decisions of this and other jurisdictions shows that recoveries for coronary thrombosis or occlusion have been made under the Workmen's Compensation act. *Wagner* v. *Lewis,* 13 *N. J. Mis. R.* 807; 181 *Atl. Rep.* 394; *Hentz* v. *Janssen Dairy Co.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409; *Gellman* v. *Reliable Linen Co.,* 18 *N. J. Mis. R.* 423; 13 *Atl. Rep.* (2d) 844; *Hughes* v. *Bloomfield Church,* 18 *N. J. Mis. R.* 139; 11 *Atl. Rep.* (2d) 417; *Farrell* v. *M. C. Ragatz & Sons Co.* (*Minn.*), 250 *N. W. Rep.* 454; *Stier* v. *City of Derby* (*Conn.*), 174 *Atl. Rep.* 332; *Becher* v. *Herschkowitz Bros.* (*N. Y.*), 262 *N. Y. Supp.* 172; *Barnes* v. *Department of Labor and Industries et al.,* (Washington Supreme Court, decided November 6th, 1940, and not yet reported in the official reports.

The facts in the case of *Wagner* v. *Lewis, supra,* are as follows: "Decedent, aged thirty-one, was employed as a laborer on a road construction job. He was in apparent good health, was robust, and was used to hard work. On the day in question he arrived at work before seven A. M. He immediately commenced doing heavy labor, dragging heavy limbs from the side of the road to a nearby field, digging up a heavy iron stop-sign with a concrete base and dragging this into the field, and then, with the aid of a fellow worker, he began cutting a large tree trunk with a saw. After sawing for about fifteen minutes, decedent's companion noticed that he appeared ill and told him to rest, but decedent insisted on continuing with his work. Within a minute or so, he collapsed and died. The cause of death was disclosed by autopsy to be a "complete but temporary occlusion or blocking of the coronary artery of the heart. In entering an award of compensation Referee Wegner said: "The medical testimony all pointed to the fact that the occlusion was caused by an increase in blood pressure due to the laborious work which decedent was performing at the time, which increased blood pressure, acting upon an already diseased and weakened heart and arteries, caused the death as the result of an accident arising out of and in the course of the employment."

In the Hentz case, *supra,* compensation was awarded because of a coronary thrombosis resulting in the death of a milk truck driver, suffering accidental heart strain in the

course of and as the result of his employment while ascending hill after making milk deliveries to the place where he left his truck, though his heart had been weakened by strain of work over a long period of time. Mr. Justice Bodine, speaking for the Court of Errors and Appeals stated as follows: "The rule of law which we deem applicable to the situation was stated in *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832, as follows: "Suffice it to say that an accidental strain of a heart, even though the heart was previously weakened by disease, may be a compensable injury under our statute when as in this case, the accident arose out of and in the course of the employment."

In the Geltman case, *supra,* death was found to have followed a coronary attack as the result of extreme emotional excitement ensuing from a traffic incident. The pertinent language used by Deputy Commissioner Medinets in his opinion is as follows: "The proofs in this case clearly indicate, and I so find, that but for the state of emotional strain, agitation and excitement, and the increased demand for coronary blood attendant therewith, the employe's death would not have taken place at the time, manner and place that it did occur. The uncontroverted medical testimony adduced by the petitioner adequately supports this conclusion. I find that the incident was the precipitating cause of the decedent's death and produced the acute anoxemia causing a change in the anatomical structure of the decedent's heart and extinguishing his life."

In the Hayes case, *supra,* an award of compensation for 100 per cent. of total and permanent disability was granted to the workman, a janitor of the respondent church. The evidence revealed that he had a pre-existing arteriosclerotic heart but which caused no disability or discomfort. On the day in question he strained his heart muscles by lifting a heavy board in the course of his employment, precipitating a coronary thrombosis.

\*       \*       \*       \*       \*       \*       \*

In the case of *Stier* v. *City of Derby, supra,* the decedent was employed as a street foreman by the defendant gas and electric company and as supernumerary policeman by the city of

Derby. It appeared that the defendant company owned an inhalator which it had long advertised as available for public use in emergencies. Decedent was one of its most efficient employes in the use of the inhalator and he had a telephone in his home which was paid for by the defendant company. He also had a key to the building in which the inhalator was kept. The inhalator was the only one available in the town and the company instructed the police department that, when emergencies arose, one of the company's employes familiar with the inhalator should be called. The company would not permit the apparatus to be given out except in custody of one of its employes. On the day in question, decedent had just returned home after attending a ball game when he received a call from the chief of police requiring use of the inhalator at a drowning. Decedent hurried in his car, drove to the ball park for a fellow worker to help him, drove to the place where the inhalator was kept, then to the police station where he got a police car with a siren. Then he drove to the scene of the drowning as rapidly as traffic would permit, using the siren enroute. Upon arriving at the scene he seized the inhalator, which weighed about seventy pounds, lifted it out of the car and ran down hill toward the river. Before arriving he was informed another inhalator had just arrived. He then carried the instrument back to the car. During most of the trip to the scene decedent was very nervous and excited, and complained of pain in his chest. Decedent became pale and covered with sweat. He was driven home but died before a doctor arrived. The cause of death was admittedly coronary occlusion or thrombosis, but medical testimony was conflicting as to whether there was a causal relation between the death and the hurried activity of the decedent immediately before his death. The compensation commissioner found that decedent's death was the result of an accidental injury arising out of and in the course of his employment by the defendant company and made an award of compensation, but dismissed the claim as against the defendant city. In finding no error in judgment dismissing defendant company's appeal from the award, the court held that the evidence was sufficient to sustain the award and said:

"Death from this source (coronary thrombosis) if caused by unusual excitement and over exertion is an accidental injury within the compensation law."

In *Bacher* v. *Herschkowitz Bros., supra,* the decedent was employed as foreman in the shipping department of jobbers in the "dried fruit and nuts" business. As he was helping some employes with their work, he strained himself in lifting a 110-pound bag of nuts. He immediately collapsed. He died two days later from coronary thrombosis. It appeared that such heavy lifting as occasioned the strain preceding his collapse was not part of his ordinary work. In affirming an award of compensation, the court said: "The evidence sustains the finding of accidental injury, and the medical testimony establishes that death resulted therefrom."

\* \* \* \* \* \* \*

So in the present case, the burden of proof which rests upon the petitioner to establish his right to compensation has been met. Upon carefully considering the entire evidence, I find and determine as follows:

That the petitioner was regularly employed by the respondent as a production manager, and that the said employment was subject to article II of the Workmen's Compensation act.

\* \* \* \* \* \* \*

That on March 9th, 1939, the petitioner suffered an injury as a result of an accident arising out of and in the course of his employment, involving the coronary vessels of his heart.

That the respondent had actual knowledge of the said accident and resulting injury on the very day of the occurrence.

That as a result of the accident and the injury sustained therein, the petitioner suffered a temporary disability from March 9th, 1939, to December 20th, 1939, inclusive, and a permanent disability of fifty per cent. of the total.

\* \* \* \* \* \* \*

It is, therefore, adjudged, determined and ordered, that judgment final be entered in favor of the petitioner and against the respondent.

\* \* \* \* \* \* \*

JOHN J. STAHL,
*Deputy Commissioner.*