# FRED BROWN v. MINNEAPOLIS BOARD OF FIRE UNDERWRITERS AND ANOTHER.[1]

June 27, 1941.

No. 32,831.

*Durham & Swanson,* for relators.
*Henry G. Young* and *Reynolds & McLeod,* for respondent.

PETERSON, JUSTICE.

*Certiorari* to the industrial commission to review an order granting compensation to employe.

The employe, Fred Brown, at the time of the injuries complained of, was employed by the Minneapolis Board of Fire Underwriters as a fireman. At the time of the alleged accidents he was about 45 years of age and had worked for his employer from September, 1928, to May, 1939. Previous to this employment Brown had been in the military service for about five years and had done various other kinds of work.

The employer's business was to salvage contents of burning buildings for insurers. The crews maintained by it answered the regular fire calls of the Minneapolis fire department in the downtown area. The duty of a crew was to carry a supply of tarpaulins to the fire and cover the contents in the burning building. The tarpaulins weighed from 22 to 27 pounds, and each member of

[1]Reported in 299 N. W. 14.

the crew frequently carried several of these tarpaulins from their truck into the building, sometimes upstairs.

On March 18, 1938, a fire occurred on one of the upper floors of the Dyckman Hotel while the employe was on duty. He rode to the fire and hurriedly, "on the run," climbed the stairs carrying three tarpaulins. When he reached the fourth floor his legs and wind gave out, and he rested awhile, gasping and choking, before continuing up to the scene of the fire. He testified that he felt weak and unable to get his breath. He also experienced the sensation of a pounding heart and a dizzy feeling, as though he were floating. These had been experienced before by him. After this fire he returned to his regular duties, but he experienced these symptoms of a pounding heart and dizzy feeling whenever the fire gong in the station rang, even though the calls were not answered. At such times he became extremely nervous.

About April 6, 1938, employe assisted at a fire in a paint store. An explosion occurred which blew him from the sidewalk into the middle of the street. Shortly after this he experienced further physical and nervous disorders. On April 18 a fire broke out in one of the top stories of the Produce Exchange Building, and employe carried three or four tarpaulins up to the fire. Here, too, he became weak, dizzy, and unable to breathe and had to stop and rest. After this he took things easier, but exertion of any kind became increasingly difficult, and finally he entered the Veterans Hospital on August 4, 1938. He returned to light work on November 15, 1938, but again entered the hospital on January 3, 1939, and has not worked since. In making his application to the Veterans Bureau, employe claimed his disability was due to his previous military service, and he supported his claim by statements that he had had dizzy spells, weakness, and shortness of breath for many years.

The claims of the parties are based upon the conflicting testimony of the medical experts. All the doctors agreed that employe suffers from arterial hypertension with enlargement and decom-

pensation of the heart, an ailment which may have existed months or years prior to the accidents complained of. This progressive disease was the underlying cause of employe's present condition. The medical experts for relators held the theory that the incidents of March and April contributed little, if at all, to employe's condition and were not material factors, as the employe would be in the same condition even though he never went to the fires because of the progressive heart disease. This was opposed by the theory of employe's expert, who testified that the March 18 and April 18 incidents were very important and that employe would not have been in such condition at the time of entering Veterans Hospital except for these events.

Relators contend there was no accidental injury within the workmen's compensation law, 1 Mason Minn. St. 1927, § 4326(h), on the grounds there was neither an unexpected or unforeseen event nor an injury to the physical structure of the body. The industrial commission found against relators on both issues, deciding that employe sustained accidental injuries by reason of an aggravation of a preëxisting heart disease. The questions presented here are whether the allowance of compensation (1) is warranted by the evidence and (2) is within the terms of the workmen's compensation law.

There is adequate evidence and authority to sustain the finding of the industrial commission. Although not undisputed, expert medical opinion was given to show that the Dyckman Hotel incident played a great part in bringing about the present condition of employe. Other evidence tended to prove that while the crews often carried tarpaulins it was unusual and out of the ordinary to carry them up such great numbers of steps. Here, then, was a sudden, extraneous event directly producing an injury to the physical structure of employe's body. The undue effort exerted in hurrying up the stairs caused a rapid increase in the decompensation of his heart. The medical expert for the employe testified that the added strain caused damage to the heart muscle. This

unforeseen result, which created employe's present condition, was directly and immediately caused by the excessive and unusual strain. Exertion as an element of causation has been recognized by this court as a basis of compensation. Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904. Injury due to strain which is of a greater degree than that usual and customary in the scope of employment is an accidental injury within the terms of the act. Wicks v. Northland Milk & Ice Cream Co. 184 Minn. 540, 239 N. W. 614. In that case we held that an employe's death caused by overexertion aggravating an existing heart infirmity was an accidental injury which was compensable. Relators rely on Stanton v. Minneapolis St. Ry. Co. 195 Minn. 457, 263 N. W. 433. In Roos v. City of Mankato, 199 Minn. 284, 271 N. W. 582, we distinguished the Stanton case from previous decisions and pointed out that it does not limit or overrule them. The rule of the Stanton case is distinguished and limited by the fact that there was no evidence of unusual strain or overexertion as a cause of the death. The present case is on all fours with the Wicks and Roos cases. The injury to the heart muscle directly and immediately caused by the sudden and violent exertion was an injury to the physical structure of the body within the terms of the statute.

Respondent is allowed $75 attorneys' fees in addition to the regular taxable costs and disbursements.

Writ discharged and order affirmed.