NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

HARRY EISEN, PETITIONER, v. JACQUARD FABRICS, INC.,
RESPONDENT.

Decided August 12, 1941.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Landau & Mehler.*

\*      \*      \*      \*      \*      \*      \*

The sole question in controversy is whether the coronary thrombosis or occlusion—admittedly suffered by the petitioner on April 24th, 1939, was the result of an accident arising out of and in the course of his employment with the respondent, or was due to natural causes independent of his said employment.

From the evidence it appears that the petitioner had been employed as a weaver by the respondent for one and a half years before the day of the alleged injury, which, he testified, occurred between seven and eight o'clock on the morning of April 24th, 1939, when he collapsed as he was standing beside his machine or loom. According to the petitioner's uncontradicted testimony, he arrived at the respondent's plant at seven o'clock on the above morning in his usual state of good health, and, because of the absence of one of the workers due to illness, Eisen was instructed by Max E. Bornstein, a superior, to replenish the quill pans with water. This task, which was not part of the petitioner's regular duties, required

the filling of a large galvanized iron pail with water from a sink located at the extreme end of the shop room, and then carrying the same to the various quill pans throughout the room and replenishing them by pouring from the pail. Upon lifting the sixth or the seventh loaded pail from the sink and carrying it to the pans, petitioner testified that he experienced a peculiar feeling with a choking sensation in his throat; that he continued, nevertheless, to fill the last three quill pans and then returned to his regular duties as weaver, standing alongside his two looms; that the aforementioned peculiar feeling persisted; and that about one-half hour later he fell across one of his machines in a complete state of collapse, with extreme pain radiating over his chest and under his armpits, perspiring profusely and unable to talk. He was thereupon assisted to the plant office by several co-workers where attempts were made to revive him; and a short time thereafter he was taken by automobile to the office of Dr. David Bornstein. Upon examination the doctor was of the impression that Eisen was suffering from either stenocardia (constricture of the heart) or coronary thrombosis (closure of the coronary artery or one of its branches), based upon the following objective symptoms: pale in appearance; cold and clammy skin; unable to talk because of pain over the sternum and both arms and because of shock and nervousness; blood pressure of 110/78; inaudible heart sounds; and a distant pulse which could not be felt. Because of his seemingly grave condition, the petitioner was permitted to recline and rest on the examining table for a half hour or so, during which period heart and circulation stimulants were administered, following which he was driven to his home by a co-worker. Upon his arrival he repaired to bed where he remained for seven weeks under the care of Dr. Abraham H. Apter—receiving conservative treatment for an ailment diagnosed by the doctor as coronary thrombosis. Later on when the petitioner became ambulatory he received several months' treatment at the doctor's office. He was first able to resume light work in December, 1939, when he entered the employ of the Platt Silk Co., operating but a single loom. At the present time he suffers from general weakness, shortness of

breath, easily fatigued on walking or standing for any long period of time, a choking sensation in his throat and a feeling of fullness in and about the chest.

A review of the voluminous medical testimony of the various physicians appearing for the respective parties discloses a definite contrariety of opinion both as to diagnosis as well as to causal relation. The petitioner's medical experts, viz., Drs. David Bornstein, Abraham H. Apter, Adolph Kroll and J. Allen Yager, the first two being treating physicians and the latter two being cardiologists, expressed the opinion that the petitioner suffered an attack of coronary thrombosis on the day in question and that there was a definite causal relation between the unusual lifting effort of the several pails of water and the resultant coronary thrombosis. They further expressed the opinion that the petitioner at the present time is suffering from the residual effects of this condition due to infarction and cardiac damage. On the other hand the respondent's experts, namely, Drs. R. Burton Opitz, Arthur M. Master and Raphael Gilardy, internists and cardiologists, expressed the opposite view to the effect that the petitioner neither suffers nor suffered from a coronary thrombosis as the result of the lifting event on April 24th, 1939. They emphatically denied that coronary thrombosis is ever caused by trauma or precipitated by an act of physical exertion, insisting that such condition is solely the end result of the disease or arteriosclerosis in the coronary vessels.

In a situation such as this where the opinions of the various medical experts of the respective parties are so hopelessly conflicting and irreconcilable, it becomes necessary for me, in order to arrive at a decision in this case, to accept the view which seems to be the more credible, logical and weighty. In my considered judgment, I feel that the greater weight of medical testimony with respect to both diagnosis and causal relation, preponderates in favor of the petitioner.

Furthermore, the lay testimony establishes the fact of petitioner's physical breakdown immediately after the accident. Prior thereto, according to his testimony and that of several co-workers he was a steady worker, in good health and who very rarely, if ever, lost any time from work by reason

of illness; but that following the accident he has suffered with a gradual decline in health, short of breath on exertion, easily fatigued and with a fullness in and about his chest.

That physical overexertion or effort may be a competent cause in precipitating the development of coronary thrombosis is no longer open to doubt. Like any other diseased condition, arteriosclerosis of the coronary vessels may, under certain circumstances, be aggravated by such trauma, resulting in a final occlusion. See *Wagner* v. *Lewis,* 13 *N. J. Mis. R.* 807; 181 *Atl. Rep.* 394; *Hentz* v. *Janssen Dairy Co.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409; *Geltman* v. *Reliable Linen Co.,* 18 *N. J. Mis. R.* 423; 13 *Atl. Rep.* (*2d*) 844; *Hayes* v. *Bloomfield Church,* 18 *N. J. Mis. R.* 139; 11 *Atl. Rep.* 417; *Farrell* v. *M. C. Ragatz & Sons Co.* (*Minn.*), 250 *N. W. Rep.* 454; *Stier* v. *City of Derby* (*Conn.*), 174 *Atl. Rep.* 332; *Bacher* v. *Herschkowitz Bros.* (*N. Y.*), 282 *N. Y. Supp.* 172.

A case which seems to be on all fours with the present one is that of *Juhl* v. *Hussmann-Ligonier Co. et al.,* recently decided by the Court of Appeals of Missouri (January 4th, 1941), and not yet reported. Because of the similar situation therein presented I deem it essential to briefly state the facts and the ruling of the court:

"Juhl had been in the employ of defendant for about two years. He had been laid off for a while in the fall. He returned to work a day or two before the accident, which occurred on December 22d, 1937. He was given a thorough medical examination before returning to work. The examination showed that his condition was satisfactory. Juhl testified: 'My first job in the morning was to get an empty five-gallon paint bucket and fill it with water at the faucet sixty feet away. On this particular morning * * * I filled the bucket full, and as I picked up the bucket of water it seemed like it strained me. I carried it about forty feet and as I turned into the glue room it was like a knife stuck me in the pit of my stomach. I then carried the bucket twenty feet and by that time the pain had me doubled up. * * * I am sixty-seven years old. * * *' The record of the hospital, to which the employee was taken, shows that

the diagnosis was coronary occlusion. Dr. Shrader who made an examination of the employee on March 1st, 1939, testified that in his opinion the lifting of the bucket of water and carrying it was a precipitating factor of the coronary occlusion. He further testified: 'Blood does not clot in a normal blood vessel. Some injury or some disease is necessary to cause blood to start to clot. In arterial diseases of old age we often have nutritional disturbances in the walls of the blood vessels * * * increased blood flow * * * might dislodge a soft poorly attached mass on the side of the wall of the artery. In my opinion that is what happened in this case. The lifting of the bucket of water would increase the flow of blood more than walking. * * * In my opinion the strain of lifting a bucket of water loosened the blood clot and accounts for the occlusion. * * *' The Commission denied compensation, and the court below affirmed the Commission's order. Plaintiff has appealed.

"The Compensation law fixes liability for injury and death by accident, not for injury or death resulting from accidental means. If in this case the employee had broken his arm in lifting the bucket of water, all would agree that there was an injury by accident. What is the difference between breaking the arm and breaking a blood vessel? None in principle, of course. The difference is not one of law, but of the proof as to what happened. In the present case, evidence of the most positive and cogent character shows that the employee's disability resulted from accident and not from natural causes. Judgment reversed and cause remanded to the court below with directions to reverse the order of the Commission and remand the cause to the Commission.

"On motion for a rehearing. Anxiety is exhibited by defendants, on motion for a rehearing, respecting what they think will be the direful consequences of this court's opinion if it is permitted to stand. But decisions in other jurisdictions, as well as in this state, are in accord with this court's view of the law. Motion for a rehearing overruled. *Juhl* v. *Hussmann-Ligonier Co. et al., St. Louis Court of Appeals Mo.,* decided December 19th, 1940. Motion for rehearing overruled January 4th, 1941."

In the present case the burden of proof which rests upon the petitioner to establish his right to compensation has been met. Upon carefully considering the entire evidence, I find and determine as follows:

\*          \*          \*          \*          \*          \*          \*

That on April 24th, 1939, the petitioner suffered an injury as a result of an accident arising out of and in the course of his employment, involving the coronary vessels of his heart.

\*          \*          \*          \*          \*          \*          \*

It is, therefore  \*   \*   \*   adjudged, determined and ordered, that judgment final be entered in favor of the petitioner and against the respondent.

\*          \*          \*          \*          \*          \*          \*

JOHN J. STAHL,
*Deputy Commissioner.*