## JOHN HIBER v. CITY OF ST. PAUL.[1]

December 22, 1944.

No. 33,906.

*Harry W. Oehler,* Corporation Counsel, *Francis M. Smith,* Assistant Corporation Counsel, and *Marshall Hurley,* for relator.

*Lewis L. Anderson,* for respondent.

[1]Reported in 16 N. W. (2d) 878.

PETERSON, JUSTICE.

The employe was awarded workmen's compensation for partial disability caused by accidental injury arising out of and in the course of his employment by the city of St. Paul. The extent of the disability and the amount of the award were left open for further determination. The employer brings the case here on *certiorari*.

The employe was a fire fighter with the rank of captain. At the time of the occurrences in question he was 60 years of age and suffering from coronary sclerosis. He claims that as the result of extreme exertion and excitement in connection with a blackout on the evening of May 7, 1943, and with extinguishing a fire on September 7, 1943, he sustained an injury to the structure of his heart, causing the disability in question.

On May 7, in connection with the blackout, he reported at his fire station prior to taking charge of a fire-alarm box about a mile distant. Ordinarily, he would have been transported to the scene of his duties either in a vehicle of the employer or on a streetcar. He intended to take a streetcar. As he was leaving the station, he saw the streetcar leave which he intended to take. In order to avoid being late, he ran and walked hurriedly to the fire-alarm box. As a result of the exertion and the excitement incident to the running and walking, he became winded and felt very severe pains in the chest. The attack lasted for approximately ten minutes. He was able, however, to get to the box, discharge his duties, and after the blackout return to his home. While the attack was a very severe one, it apparently did not disable him from continuing to perform his duties.

On September 7, he took his company to answer a call to extinguish a fire. Ordinarily, the company was composed of five men, but due to the absence of one there were only four of them at the time in question. Because the company was short one man, employe did the work of two men, in the course of which he was subjected to extreme exertion and excitement. While he was carrying a hose and nozzle of the combined weight of about 70 pounds

from the street into the basement of the building which was on fire, he felt another very severe attack, similar to the one he experienced on May 7. He was disabled by it. The district fire chief ordered him to return to the station, where the pain left him about an hour after its original onslaught. The second day following he reported for duty, but since then the employe has not worked.

Apparently, during the summer of 1943, the employe worked regularly, in the course of which he attended fires and exercised quite strenuously in fire-tower drill without any similar attacks. About May 11, four days after the original attack, employe went to his physician, who lived about the same distance from his home as the fire-alarm box was from the fire station. En route he performed a sort of practical demonstration on himself by substantially repeating the exertion of the night of May 7. He testified that as a result thereof he felt "something coming on again." His physician advised him to consult a certain heart specialist if he experienced further trouble of the same kind.

It is undisputed that employe was suffering from coronary sclerosis and that after the occurrences in question he was disabled because of his physical condition from performing the work of a fire fighter. The point in dispute relative to his physical condition is whether he in fact sustained a heart injury as a result of the extreme exertion and excitement incident to the occurrences mentioned.

Employe contended that he had suffered attacks of angina pectoris on May 7 and September 7 caused by the extreme exertion and excitement to which he was subjected on those occasions. He called as a medical expert Dr. Ben Sommers, who testified in effect that, while he is still a young practitioner, he had pursued both undergraduate and postgraduate studies of diseases of the heart and had had considerable experience in practice with such diseases as an internist, practitioner, and as an associate of other physicians specializing in the treatment thereof. He testified further that he specialized in internal medicine, which includes diseases of the heart. He made a detailed physical examination of

employe in which he used an electrocardiograph. He also obtained a detailed medical history of him with some details as to his ancestors. Based upon the physical findings, the symptoms disclosed by employe, the readings of the cardiogram, and the medical history of employe, the doctor gave an opinion that employe suffered attacks of angina pectoris, which caused damage to the heart muscles, with a resultant partial disability. In explanation of his testimony, he stated that only an autopsy (this, of course, could be performed only after death) would demonstrate the fact of physical injury to the heart muscle, but that the facts upon which he based his opinion constituted "good evidence" that a certain number of heart muscles had become degenerated by the exertion, that there was electrocardiographic evidence of it, and that as a matter of medical experience in such cases "muscle change comes right along with the disease." He stated that, notwithstanding the factual basis for his opinion, the conclusion given by him was "speculative."

The employer called as its medical expert Dr. Harold E. Richardson, whose testimony shows that he is also a heart specialist of learning, experience, and standing. He gave an opinion that employe was suffering from coronary sclerosis; that his attacks were due to temporary coronary insufficiency; and that he had no injury to the heart muscles. According to his view, the cause of employe's condition was not definitely known, but it was one of those things that come with the passing of the years and that the occurrences connected with the employment had nothing to do with causing the condition. His conclusion was that employe, because of his physical condition, could not perform the work of fire fighter but could do certain kinds of sedentary work.

The commission adopted the views of Dr. Sommers. Here, it is contended that the decision of the commission is erroneous because (1) the evidence does not show that employe sustained an accidental injury; and (2) the medical testimony for employe affords no basis for the finding of accidental injury, because his own medical expert stated that his conclusion that employe sustained an accidental injury was "speculative."

■ The award of compensation was for an *accidental injury*. In considering the case, it is important to distinguish between cases involving *accidental injury* such as the instant one and those involving *occupational disease* such as Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378, where an award was made for the death of a fire fighter caused by coronary sclerosis contracted in the course of his employment. In order to constitute an accidental injury within the meaning of the statute, there must be a sudden, extraneous event directly producing an injury to the physical structure of the employe's body. See, Caddy v. R. Maturi & Co. 217 Minn. 207, 14 N. W. (2d) 393; Stanton v. Minneapolis St. Ry. Co. 195 Minn. 457, 263 N. W. 433; Costly v. City of Eveleth, 173 Minn. 564, 218 N. W. 126. Here, the extreme exertion and excitement in connection with the occurrences mentioned were sudden, extraneous events producing, according to the employe's medical testimony, the unforeseen result of injury to his heart muscles. Consequently, as we held in Brown v. Minneapolis Bd. of Fire Underwriters, 210 Minn. 529, 299 N. W. 14, which in its essential facts is the same as the instant case and controls decision here, injury to an employe's heart muscles caused by exertion and excitement greater than is usual and customary in the performance of his duties is an *accidental injury* within the meaning of the compensation act. The award must stand if it has reasonable evidentiary support.

■ The employer's contention that the medical testimony to support the award is without evidentiary value rests upon the testimony of employe's medical expert that his conclusion was "speculative." We think that the question cannot be so simply and summarily disposed of. The rule against conjectural and speculative opinions is aimed at those not based upon a factual foundation and not at those which are. The distinction is between inference and conjecture. As Lord Shaw said in Kerr or Lendrum (Pauper) v. Ayr Steam Shipping Co. Ltd. [1915] A. C. 217, 233: "The distinction [between an inference and a conjecture] is as broad as philosophy itself. It is that an inference rests upon premises of fact

and a conjecture does not." This distinction is fundamental in determining whether the opinion of an expert has evidentiary value. An opinion of a medical expert witness based upon an adequate factual foundation is not a conjecture, but a legitimate inference, and as such has evidentiary value in determining disputed questions of fact. Golden v. Lerch Bros. Inc. 203 Minn. 211, 281 N. W. 249. Where such an opinion is not based upon an adequate factual foundation, it has no evidentiary value and should be rejected. Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852; O'Connor v. Pillsbury Flour Mills Co. 197 Minn. 534, 267 N. W. 507. The question is into which of the two categories mentioned does the testimony of the employe's medical expert fall?

Employe's medical expert's opinion that employe sustained injury to the heart muscles is based upon a factual foundation consisting of the facts relative to his physical condition, symptoms, case history, and electrocardiographic readings. These the witness, because of his education, training, and experience, had the ability and skill to interpret. The witness's mental process was that, because medical science has established as a verified fact that attacks of angina pectoris suffered by persons having coronary sclerosis cause injury to the heart muscles, it was reasonable to believe that similar attacks suffered by the employe, a person having coronary sclerosis, caused similar results in his case; and that the conclusion that the employe suffered such an injury was *speculative* because of the fact that it could not be demonstrated physically until after death. The conclusion reached by the witness was an inference of fact from known facts by applying to them a verified rule of experience. Practically all expert opinion consists of such inferences. The fact that the witness labeled his conclusion as "speculative" did not make it so in an objectionable sense. It is the intrinsic quality of the conclusion that matters, and not the label or characterization.

Words mean what they manifest. Their meaning may vary. As Mr. Justice Holmes said in Towne v. Eisner, 245 U. S. 418, 425, 38 S. Ct. 158, 159, 62 L. ed. 372, 376, L. R. A. 1918D, 254, 258: "A

word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." The word "speculative" has a varied meaning. Sometimes it is used as meaning a conclusion reached by the faculty or process of intellectual examination, search, and reasoning; sometimes as meaning conjecture, guesswork, and surmise. See, Webster's New International Dictionary (2 ed.) 1935. It is clear from a reading of the witness's testimony as a whole that he used the word with the first mentioned meaning and not the latter one, for the reason that he insisted that the factual basis for his opinion was "good evidence" for it, and that there was no uncertainty about an attack of angina pectoris causing injury to the heart muscles, because, as he said, the "muscle change comes right along with the disease." A medical expert's opinion as to the existence of a disease based upon an adequate factual foundation is not conjectural within the meaning of the rule excluding conjectural and speculative opinions merely because the expert states that his opinion is "speculative." Austin v. Red Wing Sewer Pipe Co. 163 Minn. 397, 204 N. W. 323 (cancer). See, Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 277 N. W. 536; Melancon v. Chrysler Corp. 284 Mich. 360, 279 N. W. 861. It is not necessary that the truth of an expert's opinion be capable of demonstration; it is sufficient that it is probably true. "He [an expert witness] is not required to speak with such confidence as to exclude all doubts in his mind, but may render his testimony in the form of an estimate of opinion, couched in expressions that fall short of absolute conviction of accuracy. Such qualification affects merely the probative force of the testimony." 20 Am. Jur., Evidence, § 768. See, Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487.

The fact that there was a conflict between the testimony of the employe's and the employer's medical experts raised a fact issue concerning the employe's physical condition, which was for the decision of the commission. Kundiger v. Waldorf Paper Products

Co. 218 Minn. 168, 15 N. W. (2d) 486; Gardner v. State Dept. of Highways, 199 Minn. 172, 271 N. W. 597.

Our conclusion is that the finding that employe sustained an accidental injury has evidentiary support.

Employe is allowed $100 attorneys' fees in addition to the regular taxable costs and disbursements.

Writ discharged and decision affirmed.