## JAMES ADDINGTON v. STATE OF MINNESOTA, DEPARTMENT OF UNIVERSITY FARM SCHOOL.[1]

July 22, 1938.

No. 31,706.

*Robert J. Tyrrell* and *Sexton, Mordaunt, Kennedy & Carroll,* for relator.

*R. A. Woychik,* for respondent.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to the industrial commission to review its order reversing the finding of the referee that relator sustained an injury arising out of his employment.

[1] Reported in 281 N. W. 269.

For several years prior to his injury August 22, 1936, relator had been employed as one of the operating engineers in the power plant at the Farm School of the University of Minnesota. On that date he was on duty from midnight to eight in the morning, and, as the work was not very arduous during the summer months, he was alone on this shift. Relator reported for duty just before midnight August 21. But one boiler was in operation. When functioning properly it required little attention, but on this occasion he experienced considerable difficulty in keeping the furnace burning. His attempted adjustments of the machinery necessitated many hurried trips up and down a ladder leading from the furnace room in the basement to the boiler and control room on the first floor. Because the flame was only intermittent, an accumulation of coal dust in the firebox occurred and resulted in an explosion which flung relator against the housing of some machinery near the furnace. In attempting to turn some water into the boiler he was drenched with hot water. He also attempted to put another boiler into operation and encountered further difficulties. By four o'clock the physical exertion and mental strain under which he had continuously labored since beginning his shift had left him exhausted, he says. He called the chief engineer by telephone, and after the latter arrived they succeeded in getting the furnace and boiler to operate normally. From that time until his shift ended relator rested in a chair. At his departure he still felt exhausted although his actions and appearance did not impress the chief engineer, who followed him on the next shift, as out of the ordinary.

Relator habitually ate a large lunch about 2:30 in the morning when on duty and a heavy breakfast afterward. This day he did neither, aside from sipping a little coffee at these times. After breakfast he sat on the porch for half an hour and then went to bed, where he slept for an hour and awakened to find himself too restless to return to slumber. About one in the afternoon he arose and ate his usual lunch. At three he went to an employes' picnic in company with the members of his family. Relator still felt too tired to engage in any of the contests and remained a spectator.

Toward six the group indulged in a heavy picnic dinner, and thereafter relator strolled leisurely about or remained seated until shortly before nine, when he was seized by excruciating pain centered in his chest and radiating through his arms. This was caused by a coronary thrombosis, and its effect has been to disable relator since that time. The single question presented is whether this condition was caused by the physical exertion and mental strain relator underwent during the early morning of August 22. The referee found that it was, but the industrial commission came to the opposite conclusion.

As is well known, the heart is a muscular structure receiving nourishment from blood conducted to its various parts by branches of the two coronary arteries. Coronary thrombosis is the closure of a coronary artery or of one of its branches by a deposit of platelets and fibrin, components of the blood, so that circulation through the blood vessel is blocked. Something is known about the conditions which give rise to this pathology, but its cause has never been completely and conclusively demonstrated. The closure or obstruction usually occurs where the interior of the artery has been roughened by sclerosis; the medical experts agree that relator was suffering from a sclerotic condition of the coronary arteries prior to August 22. The deposit usually commences at a time when the circulation is slow; thus nearly half of the cases occur while the person afflicted is in bed. The obstruction may form in but a few minutes, or hours or even days may elapse.

The physicians on both sides are eminently learned in this field. Those on behalf of relator were of the opinion that relator's unusual activity and mental strain proved so burdensome to his heart that it ceased to maintain normal circulation, and that the slowed circulation so caused began the formation of the obstruction which culminated that evening in making itself felt. To the contrary, the physicians appearing for respondent were unable to discover any causal connection between the exertion and the thrombosis.

The exact time the deposit which finally obstructed one of the coronary vessels started to form is impossible of demonstration,

and any conclusion concerning the time when it did start must proceed solely from inference. Compensation has been granted for disability or death resulting from coronary thrombosis upon the ground that exertion attendant upon the claimant's employment was the cause. Hill v. Etchen Motor Co. 143 Kan. 655, 56 P. (2d) 103. But in this case the coronary thrombosis manifested itself under such conditions that the exertion during work was the most likely inference as to the cause. Assuming that relator's circulation abated because of heart strain or exhaustion caused by physical effort and nervous strain, it might be inferred that the deposit began to form then; but it might be inferred with equal probability that the slowed circulation contributing to its formation was caused by his going to bed upon his return from work, or by reason of his resting after the evening meal at the picnic. Experience has shown that it is likely to occur in either of these latter circumstances. To say that it is more likely to have resulted at one time than at another is to state a speculative conclusion for which there is no preponderating proof. Cause may not be attributed to one factor when it may, with equal probability, be attached to another. Collings v. N. W. Hospital, 202 Minn. 139, 277 N. W. 910. Since there were several occasions between midnight and nine in the evening when relator's circulation would have slowed, in the natural course of events, so as to permit the formation of a thrombus, and there is no basis for inferring that it was instituted at one rather than at another of these times, the industrial commission was correct in finding that there was no proof of an injury arising out of the employment. State ex rel. Rinker v. District Court, 142 Minn. 420, 172 N. W. 311; 6 Dunnell, Minn. Dig. (2 ed.) § 10406; Carson-Payson Co. v. Industrial Comm. 340 Ill. 632, 173 N. E. 184.

Writ dismissed.