## MAUDE PETERSON v. THE RUBEROID COMPANY AND ANOTHER.

113 N. W. (2d) 85.

January 19, 1962—No. 38,322.

*Mahoney & Mahoney,* for relators.
*McLeod & Gilmore,* for respondent.

DELL, CHIEF JUSTICE.

Writ of certiorari to review a decision of the Industrial Commission.

For several years prior to the date of the injury here involved, Henry Peterson was employed by The Ruberoid Company as a loader and unloader for hopper railroad cars containing slate granules used in roofing products. The hopper car is divided into two sections. In unloading the car a conveyor weighing approximately 225 pounds is placed under one of the hoppers and the hopper door opened, permitting the slate to flow onto a conveyor belt which, in turn, transports it to bins. The conveyor unit is wheeled into position underneath the car, and it is necessary to lift one end of it in order to fit it under the hopper. It takes from 10 to 15 minutes to put the unit in position. After the hopper is opened, the operator usually goes to the top of the bin, which is 30 feet high, to see that it does not run over. To get to the top of the bin he must either climb a ladder or go up a flight of stairs.

After one hopper is emptied, the operator climbs up the side of the

car on a ladder, opens the top of the hopper, and gets down into it to sweep out any of the slate particles which might be left. This is required because slates of different color are carried in the hoppers. He then unloads the second section of the hopper car. In order to do this, it is necessary to move the car itself several feet to align the hopper opening over the conveyor unit. The car is moved by means of a car jack which is placed under one of its wheels. The operator then uses his weight to push the jack lever down and move the car forward. The positioning of the conveyor, the operation of the car jack, the climbing to the top of the bin and hopper car all require physical exertion. In unloading the second section of the hopper car, all of the movements described in reference to the first section are again duplicated.

On January 7, 1959, Peterson began work at 7 a. m. He was seen by other employees from time to time throughout the day although no one saw him actually working. At about 2 p. m. he was found lying on his back approximately 8 feet from one of the hopper cars gasping for breath. He died that same day from coronary thrombosis.

The decedent, who was 63 years of age, had become ill on December 26, 1958, and had remained in bed for 2 days. He returned to work on January 5, 1959, and had also worked on January 6. He appeared normal when he reported for work on January 7. The evidence was conflicting as to how many hopper cars had been unloaded by the decedent on the day in question. According to one witness, the conveyor unit had been placed under the car the previous day and the car partially unloaded. On January 7 the decedent finished unloading the section that he had started the previous day and then unloaded the second section. Another witness testified that two cars had been completely unloaded on January 7.

The commission affirmed the finding of the referee that the decedent sustained an injury arising out of and in the course of his employment and awarded compensation to his widow. Relators contend that there is no evidence to sustain a finding that the decedent's heart attack arose out of his employment.

Prior to the effective date of Minn. St. 176.021, it was necessary in

cases of this type for the claimant to show some unusual exertion in order for the requirement of an "accident" to be met.[1] Since the elimination of the word "accident" by L. 1953, c. 755, § 2, it is no longer necessary to prove that the strain or exertion which precipitated the harm was in itself unusual or beyond the routine of employment.[2] As relators point out, however, the fact that an employee dies from a heart attack at his usual place of employment and during his usual hours thereof is not sufficient, in itself, to impose coverage under the Workmen's Compensation Act.[3] The claimant has the burden of establishing a causal connection between the employment and the disability. In other words, it must be shown that the heart attack was brought on by strain or overexertion incident to the employment, even though the exertion or strain need not be unusual or other than that occurring in the normal course of the employment.

The evidence in the instant case was conflicting as to the precipitating cause of the decedent's attack. According to the claimant's expert, the work the decedent was doing on the morning in question "was a factor that initiated the coronary thrombosis superimposed upon old coronary disease, which he had for some time, from which he died." The relators' expert, on the other hand, could find no causal connection between the employment and the heart attack. Relators argue that since no one actually observed the decedent perform any work on the day in question, there is no evidence to support a finding that he exerted himself in any way. Relators further argue that since the assumptions made by the claimant's expert are merely speculative, his opinion is incompetent.

Where there is evidence reasonably supporting the findings of the commission—either direct evidence *or* permissible inferences—the findings must be sustained.[4] In the instant case the presence of the un-

---

[1]See, Stanton v. Minneapolis St. Ry. Co. 195 Minn. 457, 263 N. W. 433.

[2]Fleischer v. State Dept. of Highways, 247 Minn. 396, 77 N. W. (2d) 288.

[3]1 Larson, Workmen's Compensation Law, § 38.83.

[4]Fleischer v. State Dept. of Highways, 247 Minn. 396, 77 N. W. (2d) 288; Sorensen v. P. H. Thompson & Son, 248 Minn. 280, 79 N. W. (2d) 673.

loaded hopper car, with the cast iron shoe of the "car jack" in position on the track against the wheel, at the time he was seen gasping for breath shortly before his death, compels the inference that the decedent did perform his work, and permits the further inference that he performed it in the required manner. In our opinion the evidence reasonably supports the conclusion that on January 7 the decedent, at a minimum, opened the hopper, climbed to the top of the 30-foot bin, climbed the ladder to the top of the hopper car, swept it out, moved the car with the car jack, and proceeded to unload the second section of the car in the same fashion. It would also appear that the decedent was engaged in again moving the car to release the conveyor when he was seized with the heart attack.

It is, of course, difficult to establish the precipitating causes of coronary thrombosis.[5] The determination of whether the employment was a causal factor in producing the attack must necessarily rest upon competent medical testimony, and, where there is a conflict, the finding of the commission will not be disturbed on appeal.[6] Since the findings as to decedent's activities preceding his attack, as well as the factual assumptions upon which claimant's medical expert based his opinion, can be reasonably inferred from the evidence, the decision of the commission must be affirmed.

Respondent is allowed $250 attorneys' fees and costs and disbursements herein.

Affirmed.

---

[5]See, Addington v. State, 203 Minn. 281, 281 N. W. 269.

[6]Golob v. Buckingham Hotel, 244 Minn. 301, 69 N. W. (2d) 636; 1 Larson, Workmen's Compensation Law, § 12.20, p. 174.