# VIVIAN KOLFLAT v. NORTHERN ORDNANCE COMPANY AND ANOTHER.

142 N. W. (2d) 588.

May 6, 1966—No. 39,830.

*Robins, Davis & Lyons* and *Arnold M. Bellis,* for relator.
*McLeod & Gilmore,* for respondents.

FRANK T. GALLAGHER, C.

Certiorari to review a decision of the Industrial Commission denying petitioner's claim for compensation.

The petitioner's deceased husband, Adolph Kolflat, the employee, was a radial drill operator and machinist at Northern Ordnance Company. His work at employer's plant required him to drill holes of varying sizes in metal objects. The actual drilling of the holes was done by the radial drill, but the decedent was required to spot this drill over the part to be drilled and to locate the jig that guides the drill during this operation. The jigs which guided the drill varied in weight from 10 to 150 pounds or more. The lighter jigs were placed on the metal object to be drilled by the operators themselves. The heavier ones were generally raised off the floor and placed on the metal object by an overhead crane. However, even when the crane was used, the operator was required to guide the jig and sometimes push or pull it into the proper position.

On the night of December 17, 1958, the employee was operating his radial drill and doing work on a large piece of metal known as a quadrant. His work required him to stand most of the time and the evidence indicated that working on a quadrant was more laborious than the normal drilling operation. The decedent had been doing his work for about 6 hours that evening, with a half hour out for lunch. About 10 p. m. a fellow employee, Lloyd Regel, who worked across the aisle from the employee, noticed him sitting on a box near where he had been working. Regel asked him if he was all right, and the employee said that he had pain in his chest and shortness of breath. Regel was the only witness who was close enough to the employee to observe what he had been doing prior to the attack. He testified that all he could remember was that the employee was working with a jig on the quadrant, but he could not recall whether he took the jig off or put it on. He also testified that he thought that the jig weighed about 150 pounds.

Errold Johnson, an assistant foreman under whose supervision employee worked, also came over to where the employee was resting and asked him if he wanted a delivery vehicle to take him down to the plant's infirmary. The employee declined and indicated he would prefer to walk. The infirmary was about six blocks away so Mr. Regel and the foreman helped the employee to walk there. Upon their arrival the nurse called Dr. E. W. Eli, the employee's family physician, who prescribed certain medication. About 10:50 that evening the employee was taken to Fairview Hospital where he died December 25, 1958.

On December 16, 1958, the day prior to his attack, the employee had seen Dr. Eli and had then indicated to the doctor that he was experiencing pain in his chest and down his left arm when he exerted himself or was walking in the cold air, and that these symptoms had been occurring for about a week. Dr. Eli diagnosed it as angina pectoris, a term used more to describe the type of pain experienced than the cause.

The personal history report in the hospital records stated that the employee had been experiencing pains in the chest for some time prior to admission and that they had been increasing in severity until the day of his admission, when they became "intolerable." The progress reports of the hospital indicate that the employee seemed to be improving. On the morning of December 25, 1958, he was considered sufficiently recovered so that he could sit up in bed and shave himself.

After shaving, the employee apparently developed ventricular fibrillation (spasmodic convulsions) and died within 20 minutes. The autopsy report listed coronary thrombosis with myocardial infarction, pulmonary emphysema, passive congestion of lungs and liver, coronary sclerosis, and arteriosclerosis as causes of death.

The legal issue raised by petitioner on appeal is whether a denial of workmen's compensation benefits can be sustained where, the petitioner claims, there was no competent supporting medical testimony to sustain it; the commission erroneously applied the unusual-exertion rule; and the commission rejected positive eyewitness testimony of physical exertion at the time of the employee's fatal heart attack. Petitioner also contends that the commission erroneously relied upon medical opinion which lacked

probative value; that it did not meet the legal issue involved; and that its decision was not grounded upon any real or substantive evidence.

Prior to the enactment of Minn. St. 176.021 in 1953, it was necessary in cases of this type to show some unusual exertion to meet the statutory requirement of an "accident."[1] Since the word "accident" was eliminated by L. 1953, c. 755, § 2, it is no longer necessary to prove whether the strain or exertion which precipitated the harm to an employee was in itself unusual or beyond the routine of his employment.[2] However, the fact that the employee died about a week after suffering a heart attack at his usual place of employment during his usual hours there is not sufficient in itself to impose coverage under the Workmen's Compensation Act.[3] The claimant has the burden of establishing a causal connection between the employment and the disability. It must be shown that the heart attack was brought on by strain or overexertion incident to the employment even though the strain or exertion need not be unusual or other than that occurring in the normal course of employment.[4] Petitioner argues, however, that the commission, instead of determining whether there was such a causal connection in this case, applied the unusual-exertion rule in support of its decision, contrary to cases like Peterson v. The Ruberoid Co. 261 Minn. 497, 113 N. W. (2d) 85.

In the Peterson case, employee loaded and unloaded hopper railroad cars containing slate granules used in roofing products. On the morning of January 7, 1959, he started work at 7 a. m. He was seen by other employees from time to time throughout the day although no one saw him actually working. At about 2 p. m. he was found lying on his back gasping for breath near one of the cars and died the same day from coronary thrombosis. The employee, who was 63 years of age, had become ill on December 26, 1958, and remained in bed for 2 days. He returned to his work January 5, 1959, and also worked the next day. He appeared normal when he reported for work on January 7. There was a conflict in the

---

[1] Stanton v. Minneapolis St. Ry. Co. 195 Minn. 457, 263 N. W. 433.

[2] Fleischer v. State Dept. of Highways, 247 Minn. 396, 77 N. W. (2d) 288.

[3] 1 Larson, Workmen's Compensation Law, § 38.83.

[4] Peterson v. The Ruberoid Co. 261 Minn. 497, 113 N. W. (2d) 85.

evidence as to how many hopper cars had been unloaded. According to one witness the employee finished unloading a section of a car he had started to unload the previous day and then unloaded a second section. Another witness said 2 cars had been unloaded by decedent on the day in question.

The evidence in the Peterson case was also conflicting as to the precipitating cause of the decedent's attack. According to the claimant's expert witness, the work employee was doing on the morning of the day he died was a factor that initiated the coronary thrombosis superimposed upon old coronary disease, which he had had for some time. On the other hand, the expert for the employer could find no causal connection between the employment and the heart attack. The employer contended that since no one actually observed the employee perform any work that day there was no evidence to support a finding that he exerted himself in any way, and that since the assumptions made by the claimant's expert were merely speculative, his opinion was incompetent.

In sustaining the findings of the commission awarding compensation, we stated that the presence of the unloaded hopper car with the cast iron shoe of the "car jack" in position on the truck against the wheel, at the time the employee was seen gasping for breath, shortly before his death, compelled the inference that he had performed his work and permitted the further inference that he did so in the required manner. We held that the evidence reasonably supported a conclusion that on the day of his death, the employee, at a minimum, opened the hopper, climbed to the top of a 30-foot bin, climbed a ladder to the top of the hopper car, swept it out, moved the car with the jack, and proceeded to unload the second section of the car. Also, it would appear that he was engaged in again moving the car to release the conveyor when he was seized with the heart attack.

It is our opinion that the facts and circumstances in Peterson differ from the instant case. It is reasonable to infer that in Peterson the employee was engaged in much heavier and more strenuous work than in the case before us. There, as here, we have conflict between the medical experts. We have repeatedly said that in such conflicts the commission, as the factfinder, must determine which expert's testimony it will accept.

Also, that where the evidence reasonably supports the finding of the commission—either direct evidence or permissible inference—the findings must be sustained.[5]

In the instant case three medical experts were called to give their views on whether the decedent's death was work-related. Each doctor based his testimony on hypothetical explanations with respect to what type of activity the decedent was engaged in prior to his heart attack. Two of the doctors, called by the claimant, indicated that death was due to coronary thrombosis (blood clot) which occluded (blocked) the flow of blood causing myocardial infarction. They also expressed the belief that this occlusion occurred while the employee was at work on December 17, 1958, and that it was due to the strain of his work.

The other doctor, called by the employer, attributed the employee's death to arteriosclerosis (hardening of the arteries) and said that it was not related to the employment. He based his view on the autopsy report and the progress report of the hospital, which indicated that the condition of sclerosis was quite severe.

The petitioner claims that the commission refused to accept the uncontradicted testimony that the work the employee was performing on the evening he suffered his attack was strenuous in nature, and that it rejected the opinions of the two medical experts that a causal relationship existed between the employee's death and his employment on the grounds that no unusual exertion was shown. The medical expert called by the employer testified, however, that he did not believe that the employee's work was connected with his death. So here again we have the quite usual conflict between the experts, and the existence of a causal relationship between the alleged work-related heart attack became a fact question which the commission is required to decide. If reasonable inferences could be drawn either way, the facts found by the commission must stand.[6]

We cannot agree with petitioner's claim that the testimony established without question that the work the employee performed on the evening of December 17, 1958, was strenuous. The testimony of Mr. Regel at

---

[5] Sorensen v. P. H. Thompson & Son, 248 Minn. 280, 79 N. W. (2d) 673.
[6] Danussi v. Easy Wash, Inc. 270 Minn. 465, 134 N. W. (2d) 138.

best was inconclusive. He testified that he thought that the employee was putting a jig on the quadrant prior to the heart attack, but that he could not be sure whether the employee had been putting it on or taking it off. There is no direct evidence, however, that the employee had to exert himself during this operation. The evidence does not indicate whether the jig had been placed in any awkward position or that it had become stuck, or that the employee was working under tension or doing anything which required exertion of a strenuous nature.

Since it is our opinion that the record does not support the assertions of the petitioner that the employee performed strenuous work on the night of his attack, the decision of the commission is affirmed.

Affirmed.