RICHARD SAHOLT v. NORTHWEST AIRLINES, INC., AND ANOTHER.

188 N. W. (2d) 772.

June 25, 1971—No. 42823.

*Lasley, Foster & Roehrdanz,* for relator.

*Jardine, Logan & O'Brien* and *Graham Heikes,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

NELSON, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission vacating certain findings and the determination of a compensation judge, entering new findings, and denying relator's claim for further compensation and medical benefits.

Relator, Richard Saholt, was employed by respondent Northwest Airlines, Inc., as a plane cleaner from 1961 to 1968. On November 15, 1967, while eating lunch in a hangar lunchroom, he became involved in an altercation with another employee and claims that he suffered physical and emotional injuries due to that altercation which required medical care and have resulted in total disability.

Relator saw a doctor on the day of the altercation. The doctor treated him for soft tissue bruising of the left side of the chest and prescribed aspirin, warmth, and a rib belt, although X rays

revealed no fracture. Relator was suspended from work for 5 days for his part in the altercation. He did not return to work but instead took a leave of absence and went to Mexico. On January 2, 1968, Northwest discharged relator from its employment and he has not been employed since. Subsequently, relator was paid 6 weeks of compensation for his injuries sustained in the altercation and attendant medical expenses. In this proceeding relator sought further compensation and medical expenses.

At the compensation hearing relator testified that he had had serious emotional impairment in early childhood; that he was born left-handed and was forced to change from being left-handed to right-handed and back again not less than five times; that his father was a "despot" causing constant "explosions" within the family circle and that his relationship with his father was "zero"; that he had stuttering problems as a youngster and was severely withdrawn and had experienced severe learning difficulties; that while in the Army in 1945, he had suffered a concussion in combat as a result of an explosion; and that after being honorably discharged, he began experiencing "nervous depression" and "blackouts," which continued during the next 25 years.

Relator further testified that in the years following military service he had held in excess of 20 different jobs prior to going to work for Northwest in 1961. The great majority of these jobs he quit because of "nervous trouble" and being "tensed up." While at Northwest, he saw a chiropractor weekly and sometimes more frequently to "keep my nerves down." He testified that he was harrassed and teased by his coworkers and that these actions "shattered" his whole nervous system and he went home a "nervous wreck" every night.

Relator was often absent from work. In 1964 he was absent 33 days; in 1965, 71 days; in 1966, 32 days; and in 1967, 56 days. He also testified that since he began work for Northwest he had flown to Mexico about 20 times for a change of scene and for treatment by a psychiatrist and a chiropractor there. He also

testified that he has lost all incentive for everything and cannot function any more; that he goes to pieces over anything; and that his wife handles all responsibility and makes all the decisions. In essence, he claims that he can no longer hold a job, having been rendered emotionally unstable by the altercation. He presently receives social security disability payments and non-service-connected disability payments from the Veterans Administration.

Dr. Andrew Leemhuis, a neurologist and psychiatrist, testified that he saw relator on two occasions and that relator was in excellent physical condition but that he had had schizophrenic tendencies for many years. The doctor described relator's psychological changes as getting worse. Relator's counsel, after enumerating many of the experiences relator had testified to, asked Dr. Leemhuis if he had an opinion as to the causal relationship between relator's present condition and the incident of November 15, 1967. Counsel for respondents at this point interjected and presented a hospital history and findings relative to relator's hospitalization at Veterans Hospital in May and June of 1965, at which time relator had shown similar symptoms and feelings of tenseness and depression and had been diagnosed as suffering from chronic undifferentiated schizophrenia. Giving consideration to these facts also, Dr. Leemhuis stated that in his opinion the incident of November 15, 1967, caused relator's psychological state to change from chronic undifferentiated schizophrenia to paranoid schizophrenia and that at the time of the hearing relator was not able to carry on a gainful occupation.

Dr. Robert L. Meller, a neurologist and psychiatrist called by respondents, testified that he saw relator once, examined him, and concurred with the Veterans Hospital that he was a chronic undifferentiated schizophrenic. Dr. Meller also testified that a Minnesota Multiphasic Personality Inventory Test administered to relator showed relator to be "no more paranoid than a lot of normal people." The doctor testified that in his opinion the altercation and the injuries sustained by relator on November 15,

1967, were not causally related to relator's present psychiatric disability, did not constitute a permanent aggravation of his psychiatric condition, and that he could return to employment similar to the work he had been doing at Northwest.

The compensation judge in his findings and determination dated March 16, 1970, found that relator had sustained personal injury arising out of and in the course of his employment, was unable to pursue any gainful occupation, and, as a result, suffered additional temporary total disability to the date of hearing. The compensation judge determined that relator was entitled to continuing workmen's compensation benefits and medical care.

On appeal the commission reversed, making findings that relator sustained no disability subsequent to December 27, 1967, as a result of the injury of November 15, 1967, and that he required no further medical care as a result of that injury.

■ The main issue before this court on appeal is whether the findings of the commission are manifestly contrary to the evidence, as relator contends.

The medical experts who testified at the hearing before the commission were in accord that relator was in excellent physical condition at the times of their examinations prior to the hearing. With respect to his mental state and its relation to the altercation of November 15, 1967, they disagreed sharply.

As stated above, the record reveals that in May and June of 1965, some 2½ years prior to the altercation with his fellow employee, relator was admitted to Veterans Hospital for psychiatric evaluation and treatment. Some of his complaints presented during his hospitalization are almost identical to the complaints for which he now seeks workmen's compensation, such as persistent insomnia, depression, anxiety, inability to make decisions, feelings of fatigue, and suicidal tendencies.

His hospital history also revealed that relator experienced a lack of interest in everything for two years prior to hospitalization, had a totally exhausted feeling most of the time, and was

disgusted with everything. After 6 weeks of observation and treatment, relator was discharged.

Dr. Leemhuis was of the opinion that the incident of November 15, 1967, had caused relator's condition to change from a chronic undifferentiated schizophrenia to a paranoid schizophrenia. Dr. Leemhuis admitted that in classical paranoid schizophrenia the delusions suffered by the patient have no basis in reality and are concrete instead of vague, neither of these characteristics being present in relator's case. According to Dr. Leemhuis many different things aggravated relator's condition, of which the incident of November 15, 1967, was only one. He also admitted that in his opinion relator would never have gotten well even without the incident of November 15; but the doctor thought that he "might" not have gotten worse. Dr. Leemhuis stated that there was no question that relator was a schizophrenic before the incident and admitted that the substantial causes of relator's basic schizophrenia were factors other than the incident of November 15, 1967.

Dr. Meller who had treated probably 100 cases of schizophrenia in the 2-year period before the hearing, stated that his diagnosis was chronic undifferentiated schizophrenia and that in his opinion this condition was not causally related to the incident of November 15. He also gave the opinion that relator could return to work at the same level as he had before.

Thus, the medical testimony was directly conflicting on the crucial question of whether relator's present disability was causally related to the altercation. In effect, it presented a fact issue for determination by the commission. Under these circumstances the rules for our review of its determination are well settled. We have repeatedly said that the function of this court in review on certiorari directed to the Workmen's Compensation Commission is not to see whether on the facts the decision of the commission is correct or even preferable to another, but rather, and only, to ascertain whether it has sufficient basis of inference reasonably to be drawn from the facts; and that unless this court

can say there is no such basis, a reversal would be a transgression of the proper function of review as distinguished from that of initial decision of determinative fact issues. See, Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67; Fleischer v. State Department of Highways, 247 Minn. 396, 77 N. W. (2d) 288; Anderson v. Armour & Co. 257 Minn. 281, 101 N. W. (2d) 435; MacNamara v. Jennie H. Boyd Trust, 287 Minn. 163, 177 N. W. (2d) 398. A finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to the one at which the commission arrived.

Moreover, on review, the evidence upon which the commission determined the facts and made its findings must be viewed in the light most favorable to such findings. It is not our function, as it is that of the commission, to retry the case on appeal. We are concerned only with the question of whether there is evidence to sustain the findings of the commission. Casey v. Northern States Power Co. *supra.* We conclude here that the evidence as a whole sustains the findings.

■ It has also been repeatedly held by this court that in workmen's compensation cases conflicts in medical opinion must be resolved by the commission as trier of fact. Schmillen v. Dave Schroeder Grocery, 250 Minn. 561, 85 N. W. (2d) 740; Kolflat v. Northern Ordnance Co. 274 Minn. 104, 142 N. W. (2d) 588; Grabowski v. Great Northern Oil Co. 283 Minn. 205, 167 N. W. (2d) 14. In this case, Dr. Meller's opinion in itself is a credible and persuasive basis for the decision of the commission since the doctor's opinion is corroborated by much of the other evidence in the record and especially by the comparison of relator's testimony as to his condition at the time of the hearing and the evidence about his condition at the time he entered Veterans Hospital 2 years prior to the hearing.

The decision of the commission is affirmed.

Affirmed.