## JULIA WEVER v. FARMHAND, INC.

243 N. W. 2d 37.

May 28, 1976—No. 45927.

*Lasley, Gaughan, Reid & Stich* and *W. M. Lasley*, for relator.
*Richard C. Smith* and *Larry Meuwissen*, for respondent.

PER CURIAM.

Relator seeks review of a decision of the Workers' Compensation Board awarding benefits to respondent, widow of the de-

ceased employee.[1] The only question before the court is whether the evidence sustains the board's finding of a causal relationship between the employee's fatal heart attack and his employment.

The employee, age 60, died on Sunday, December 7, 1969, approximately 10 or 11 hours after leaving work. He was employed as a welder on the afternoon shift. During the week preceding his death he worked 6 days. The first part of the week he assembled 10-pound rake wheels, assembling 28 on Wednesday and 45 on Thursday. On Friday and Saturday he assembled tork tubes, a basic tube weighing 35 pounds to which parts weighing 43 pounds were attached. Although a compressed air hoist was available for lifting, no evidence was submitted as to whether or not it was used by the employee. While working, the employee wore approximately 12 pounds of protective clothing.

On Friday, December 5, 1969, the employee appeared and acted very tired. He complained of a pain in his right side and said he wished he did not have to work that night. When he returned home from work, he appeared more tired, moving very slowly. His complexion was described by his wife as pallid and ashen, "very, very different than what he had ever looked like." He slept very restlessly that night.

Larry Hudson, the employee's son-in-law drove him home from work Saturday night. When Hudson commented that the employee appeared tired, he replied, "[T]he bastard put me back on heavy duty." The employee also complained to his wife that evening that work had been "bad," that he had been put on hard work again. He appeared very pale and dragged out that evening. He rubbed his left shoulder and groaned. Although he took a pain pill and a sleeping pill, he was awake most of the night groaning and going to the bathroom several times. He died at approximately 10:30 a. m. Sunday.

Two doctors testified at the compensation hearing. Dr. Raymond W. Scallon was of the opinion that the employee's fatal

---

[1] This matter was previously before the court. See, Wever v. Farmhand, Inc. 302 Minn. 546, 224 N. W. 2d 162 (1974).

heart attack resulted from the natural degeneration of coronary disease. Dr. Marvin Segal testified that in his opinion the employee's work activities aggravated his preexisting coronary atherosclerotic disease, inducing myocardial infarction and subsequent death.

Aggravation of an existing heart condition by work-related activity is compensable despite the fact that such work would not injure a healthy heart. Dudovitz v. Shoppers City, Inc. 282 Minn. 322, 164 N. W. 2d 873 (1969); Kemling v. Armour & Co. 222 Minn. 397, 24 N. W. 2d 842 (1946). In Stibbs v. Northwest Airlines, Inc. 277 Minn. 248, 252, 152 N. W. 2d 318, 321 (1967), we discussed the requisite relationship between work activity and death by heart attack as follows:

"* * * While it is no longer necessary to show that the exertion must be something extraordinary, or an accident, Golob v. Buckingham Hotel, 244 Minn. 301, 69 N. W. (2d) 636, it must be shown that the death from a heart attack is due to the work that was being done and that the employment was a contributing factor in bringing about the death."

Conflict in the opinions of medical experts must be resolved by the compensation board as triers of fact. Grabowski v. Great Northern Oil Co. 283 Minn. 205, 167 N. W. 2d 14 (1969). The compensation board's findings on questions of fact will not be disturbed unless consideration of the evidence and inferences permissible therefrom clearly require reasonable minds to adopt contrary conclusions. Saholt v. Northwest Airlines, Inc. 290 Minn. 393, 188 N. W. 2d 772 (1971). In Dudovitz v. Shoppers City, Inc. 282 Minn. 322, 327, 164 N. W. 2d 873, 877 (1969), we noted the following:

"It is only when the evidence is so conclusive that only one inference is permissible that this court on review may interfere with the finding of the Industrial Commission. This rule is particularly applicable to cases involving causal relationship between a heart attack of one kind or another and the employment.

Here, probably more than anywhere else, it is next to impossible to determine causal relationship with any degree of certainty, and the factfinder's choice between permissible inferences must be based on the credibility of the medical experts in the case as applied to the other evidence in the case. And when they have divergent views it is not for us to say which was right."

The determinative finding that the employee's death was causally related to his employment is supported by substantial evidence in view of the entire record as submitted.

Attorneys fees in the amount of $350 are awarded respondent on this appeal.

Affirmed.

OTIS, JUSTICE (dissenting).

Decedent, a welder aged 60, suffered a fatal heart attack at his home on December 7, 1969. The issue is whether his death was caused by his employment.

On August 9, 1969, decedent was involved in an automobile accident which was not work related. He suffered two fractured ribs, remained in the hospital for three days, and did not return to work for six weeks. On October 2, 1969, when his doctor took X-rays, or on the following day, decedent complained that he was suffering from numbness in his fingers.

The decedent's widow testified that after his automobile accident he tired easily and stopped taking his usual walks. He went to bed right after getting home from work, not stopping to converse with her as was his custom. His habit of arising in the morning to make his wife's coffee also ceased. On December 1, 1969, the Monday before his death, his wife observed the decedent showing evidence of even greater fatigue and resting more than usual. He became less active, appeared pale, and on Friday complained about his right side and was reluctant to go to work. His appetite was poor; he ate breakfast later than usual and had a light lunch. When he returned from work he was tired, walked slowly and appeared ashen. He awoke often during the night and

was restless. On Saturday he was pale and drawn, picked at his food, and when he returned from work his skin was clammy and he shuffled when he walked. He took a pain pill and a sleeping pill but got up frequently during the night. He died the next morning.

On Wednesday and Thursday prior to his death decedent assembled 28 and 45 rake wheels respectively, each weighing 10 pounds. On both Friday and Saturday he assembled 20 tork tubes, consisting of a basic tube weighing 35 pounds to which 43 pounds of parts were added. A compressed air hoist was available for lifting.

At the compensation hearing, two doctors gave medical testimony. Raymond W. Scallon, a specialist in cardiology, testified that the decedent's fatal heart attack was not caused by his work but resulted from natural degeneration.

"Q. And do you have an opinion as to the cause of the recent hemorrhage or likely cause?

"A. I believe this fits in well with the generally accepted hypotheses of how coronary artery disease progression is. That this is a degenerative phenomenon.

"Q. What actually is the hemorrhage; what causes it and what does it consist of?

"A. The hemorrhage usually occurs in an area of preceding disease and is associated with these degenerative plaques; hemorrhage will occur and then the natural reaction of the body to injury will take place and clot and fibrous tissue will form in the areas of hemorrhage and these in turn will pick up some of the fat and other substances that are floating through the blood stream and the plaque will enlarge or get larger. This is one of the oldest theories proposed by a gentleman, Rokatansky, for the natural development of coronary artery disease."

Dr. Marvin S. Segal, an internist with a background in cardiology, agreed that the decedent had an advanced case of atherosclerosis and had had a previous myocardial infarction. With that background he was of the opinion that the exertion

required by decedent's Friday and Saturday work activities was the cause of the fatal attack. However, he went on to testify as follows:

"Q.   What you're telling us then, Doctor, is you feel that there was greater exertion on Friday and Saturday; that you can't say how much greater and you really can't give us any specific formula for making that determination.

"A.   Yes."

I concur in the views expressed by Commissioner James Pomush, who said:

"The record indicates that the employee had been very tired since his automobile accident of 1969 and that his health continued to decline since that time. I find nothing in the record of substance to indicate that there is any relationship between the employee's work and his heart attack."

The evidence most favorable to respondent falls far short of sustaining her burden of proving a causal connection between decedent's employment and his death. The mere fact an employee develops a degenerative heart condition while holding down a job does not constitute proof that his disability was work related. Koflat v. Northern Ordnance Co. 274 Minn. 104, 142 N. W. 2d 588 (1966). Unhappily a great number of employees in every walk of life contract heart conditions which are congenital or attributable to diet or their lifestyle and are wholly unrelated to their working conditions. The mere fortuity of being employed at the time of a fatal heart attack does not confer a right to compensation. There must be a showing that the employee would not have been stricken but for the activity necessitated by his employment.

In the absence of any such proof I would adopt the opinion of Commissioner Pomush and would reverse.