Richard ANDERSON, Relator,

v.

ASSOCIATED MILK PRODUCERS,
INC., et al., Respondents.

No. 48811.

Supreme Court of Minnesota.

March 2, 1979.

Tierney, Norton, Schomburg & Krieser and Peter J. Krieser, Minneapolis, for relator.

Cousineau, McGuire, Shaughnessy & Anderson and James R. Waldhauser, Minneapolis, for respondents.

PER CURIAM.

Employee seeks review of a decision of the Workers' Compensation Court of Appeals denying him compensation for temporary total disability after November 24, 1974. He contends that the evidence required a finding that, with the exception of one day, he has been disabled since February 1, 1975. After review of the record we are compelled to affirm.

On March 4, 1971, while cleaning separators at the employer's creamery, employee suffered a serious chemical burn on his left foot. He was disabled for several months and had to have skin grafts, one of which extended around his heel in the area overlying his Achilles tendon insertion. The employer and its compensation insurer accepted liability and paid medical expenses and temporary total disability benefits for 46⅘ weeks. Employee testified that he returned to his job in December 1971 but found that the walking required by his work caused his heel to become sore and the grafted area to break open and bleed. In 1972 he was given a lighter job by the employer in its milk-testing laboratory. This job permitted him to sit most of the time although he was required to climb the side of milk truck tanks to obtain small samples of milk 20 times a day and to carry the samples to the laboratory. He said that even on this job his heel broke open at times, but admitted that he could perform the work. In July 1972, however, the employer asked him to return to his former job. He refused because he thought it would require too much activity and quit. He then registered with the state unem-

ployment office at Fergus Falls, but made little other effort to obtain employment and did not work until September 24, 1974.

From that time until November 15, 1974, he worked at the turkey plant where his wife was employed. His job permitted him to sit and to operate a machine with his uninjured foot, but his left heel again began to break down and he left this work temporarily to permit it to heal. On November 24, 1974, however, he was stabbed in an argument at a liquor store, so he could not return to the job as he had planned to do. On December 4, 1974, a settlement of employee's compensation claims through November 11, 1974, was approved and he received an award for an additional 57 weeks of temporary total disability and for a 5-percent permanent partial disability of his left foot.

By February 1, 1975, employee's stab wounds had healed, but his job at the turkey plant had been taken by another employee. Employee did not work again until August 6, 1976, when he worked a day loading boxes at the turkey plant. He said his foot swelled and his heel broke open and bled that evening. He has not worked since and in January 1977 filed a claim petition seeking temporary total disability from November 18, 1974.

At the compensation hearing Dr. Sheridan Stevens, a plastic and reconstructive surgeon who testified as a witness for employee, expressed the opinions that employee has a 10-percent permanent partial disability of his left foot and that more than an hour of walking or climbing spread through an 8-hour workday could lead to breakdown in the graft on employee's heel. The witness had not found that employee's heel had excessive scar formation, which would indicate deep ulceration, but said that persistent superficial abrasion over an ulcer will deepen it. He agreed that employee could perform work in which he could sit down most of the time and would stand or walk only occasionally for short periods.

Dr. Thomas Arnold, an internist who testified for the employer and insurer, ex-

pressed the opinion that the burn employee had suffered of itself would not prevent him from being employed at any occupation. He said that he had found no evidence on physical examination to substantiate employee's history of recurrent bleeding from the skin graft on his heel and had found the graft in that area to be well healed. He also said that employee suffers from diabetes, obesity, Laennec's cirrhosis resulting from alcoholism, and mild hypertension related to the cirrhosis. Dr. Arnold expressed the opinion that in May 1973 employee's alcoholism had been a factor limiting his employability and that by July 1976 the cirrhosis had deprived employee of the physical or mental stamina to work steadily.

Michael Graham, a vocational expert, expressed the opinion that if employee cannot work as a laborer because the physical activities required would result in his heel breaking open, he is unemployable because of his limited education and lack of skills.

On this evidence the compensation judge found that employee was temporarily and totally disabled from November 16 to November 24, 1974, and from February 1, 1975, to the date of hearing on April 22, 1977, except for the day he worked in August 1976, and that his disability was continuing, and that it was a result of the injury of March 4, 1971. On appeal the court of appeals set aside this finding and substituted one which found that employee "still shows substantial difficulty with his left foot," but that it cannot be determined from the present evidence whether or not his work-related injury was a substantial cause of his disability after February 1, 1975. Consequently, it awarded him compensation for temporary total disability only from November 16 to November 24, 1974.

Employee urges that the compensation judge's finding was supported by sufficient evidence and the employer and insurer did not present sufficient evidence to rebut his evidence of total disability after February 1, 1975 (with the exception of the day in August 1976). It is the decision

of the court of appeals, however, which we review, and it is settled that it is not the function of this court in reviewing that decision to see whether on the facts the decision is correct or even preferable to another, but rather, and only, to ascertain whether it has sufficient basis of inference reasonably to be drawn from the facts. Unless this court can then say that there is no such basis, reversal would be a transgression of our proper function of review as distinguished from that of initial determination of fact issues. Moreover, the findings of the court of appeals are reviewed in the light most favorable to them. *Saholt v. Northwest Airlines, Inc.,* 290 Minn. 393, 188 N.W.2d 772 (1971).

■ If this is done, we believe that the court's finding that it cannot be determined from the evidence whether the employee's foot injury was a substantial cause of his disability after February 1, 1975, must be sustained. Although the compensation judge inferred from employee's prior excellent work record that his other problems were not significantly contributing to his disability, both Dr. Arnold's opinions that by May 1973 alcoholism was a limiting factor in employee's ability to work and that by July 1976 he lacked the physical and mental stamina to work steadily because of his cirrhosis, and the evidence of the slightness of employee's effort to find work after February 1, 1975, militate against the inference drawn by the compensation judge and permit the conclusion reached by the court of appeals in finding that the evidence did not permit determination of whether employee's foot injury was a substantial cause of his disability after February 1, 1975. We have recognized that when the trier of fact has a choice between conflicting evidence or diverse inferences may be drawn from the evidence, its conclusion must stand unless manifestly and clearly contrary to the evidence. *Nelson v. Lutheran Mutual Life Ins. Co.,* 311 Minn. 527, 249 N.W.2d 445 (1976). There being substantial evidence to support the finding, the decision under review must be affirmed.

Affirmed.