**Calvin CAMERON, Relator,**

v.

**AMERICAN LEGION POST 435 et al., Respondents.**

**No. 49110.**

Supreme Court of Minnesota.

July 13, 1979.

Roger A. Johnson, Minneapolis, for relator.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne and O. C. Adamson, II, Minneapolis, for respondents.

PER CURIAM.

Employee seeks review of a decision of the Workers' Compensation Court of Appeals denying his claim for compensation for temporary total and permanent partial disability. Since our review of the record requires us to conclude that the finding that his disabling heart condition did not arise out of and in the course of his employment has sufficient evidentiary support, we affirm.

American Legion Post 435 has a large membership and operates a restaurant serving lunches, dinners, and banquets on special occasions for its members and their guests. Employee was hired by the Post in 1963 as a cook. In the next 6 months both the chef and the kitchen manager were discharged, and employee assumed their duties. In the following years he trained and supervised other food service employees, purchased supplies, prepared menus, and supervised the work in the kitchen and the preparations for the frequently-held banquets at the restaurant. He worked long hours, sometimes 18 a day and always in excess of 50 a week, as the Post's restaurant business expanded from one averaging $18,000 a month in gross receipts in 1963 to $60,000 a month by 1976.

There is no question that employee's work was physically demanding, and he testified that it also involved occasional friction with the Post's board of directors about obtaining equipment he thought needed for successfully operating the restaurant.

On June 18, 1976, employee, who was then 51 years of age, returned to his home and napped from 3 to 4 p. m. as he often did. He awoke with chest pain and was hospitalized for 5 days. He was released on June 23. After only a few hours he returned with chest pain and a myocardial infarct was then diagnosed. He recuperated in the next several months, returned to work November 2, 1976, and performed most of his usual duties without incident until December 16. On that day he fainted and was hospitalized for a week. He did not suffer a heart attack at that time, but has not returned to work. The medical experts agreed that he has a permanent partial disability of the heart, estimated by Dr. Thomas Layman at 30 percent and by Dr. Dean K. Rizer at 25 percent, and suffers from coronary arteriosclerosis. They agreed also that in January 1978 he was temporarily totally disabled, but differed sharply on whether his work had contributed causally to his disability.

Dr. Rizer, an internist who examined employee for the employer-insurer in August 1977, expressed the opinion that employee's heart symptoms and disability from June 1976 on were unrelated to his work. Although in his opinion an acute emotional stress might cause coronary insufficiency which would in turn cause an infarction, he said there is no evidence that long hours and emotional stress of the sort faced in everyday work have any influence on coronary artery disease. He thought the important factors in employee's disability were his obesity, smoking, alcohol intake, lack of exercise, and family history.[1]

---

1. Employee was 5 feet 7 inches and had steadily gained weight from 155 pounds in 1960 to 250 pounds in 1976. He began smoking cigarettes at 17 or 18 and smoked from two to four packs a day until his hospitalization in June 1976, although he said he seldom smoked when not at work and would light and not finish cigarettes there. For several years he drank heavily although he stopped doing so in 1974. He golfed and bowled once or twice a week. A parent had died at 80 of a heart attack and a brother had died, possibly of a heart attack, at 57.

Dr. Layman, a cardiologist who examined employee in April 1977, agreed that obesity, cigarette smoking, family history, and high blood pressure[2] are cardiac risk factors, but expressed the opinion that employee's work was a direct contributing cause to his arteriosclerosis because the work had involved continuous, almost daily, mental stress for a long time which, he said tended to keep employee's blood pressure slightly elevated and his adrenalin level high, which in turn kept blood fats at a high level. Dr. Layman did not address the question of the degree such stress must attain to produce these effects. Cf. *Klapperich v. Agape Halfway House*, 281 N.W.2d 675 (Minn. 1979) (filed June 8, 1979).

Although the compensation judge resolved the obvious conflict in the opinions of the medical experts on the effect of employee's work on his disability by finding that due to the cumulative effect of repetitive aggravation employee had sustained injury to his heart and coronary arteries arising out of and in the course of his employment, the court of appeals reversed and found instead that his heart condition is not causally related to his employment. That tribunal was required to assess the credibility of the opinions expressed by the medical experts, and as a reviewing court we have consistently refused to disturb findings resolving conflicting expert testimony unless a consideration of all the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to that of the court of appeals. *Klapperich v. Agape Halfway House, supra; Wever v. Farmhand, Inc.*, 309 Minn. 42, 243 N.W.2d 37 (1976). That is clearly not the case here, where both experts admitted that obesity, smoking, lack of exercise, and family history—all present here—are recognized cardiac risk factors. Moreover, employee's long tenure in a demanding position permits the inferences both that it was work he enjoyed doing and that it did not impose mental stress upon him great enough to be a significant contributing cause of his arteriosclerosis and heart condition.

Employee asserts, however, that the court of appeals improperly imposed on him the burden of proving his compensation claim by clear and convincing evidence rather than by a fair preponderance of the evidence. We agree that the latter is the correct standard of proof. While employee's assertion that the more rigorous standard was imposed rests on language in the memorandum accompanying the decision appealed from, we have held that a decision of the court of appeals may be affirmed although we do not adopt a theory expressed by that court as a reason for it. *Villebrun v. Fryrear*, 288 Minn. 478, 183 N.W.2d 279 (1970). However, we believe that if the memorandum is considered as a whole, it merely recognized the difficulty of proving compensation claims where disability results from heart conditions and expressed the necessity that such claims be proved beyond speculation and conjecture.

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.

---

2. Although employee was in apparent good health before June 1976, his blood pressure had been elevated at times in prior years.