Janet M. AKER, widow of James A. Aker, Deceased Employee, Respondent,

v.

STATE of Minnesota, DEPARTMENT OF NATURAL RESOURCES, (self-insured), Relator.

No. 49249.

Supreme Court of Minnesota.

July 20, 1979.

Jeffrey B. Nelson, St. Paul, for relator.

Robert V. Daly, Jr., Compensation Atty., Duluth, for respondent.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

The state of Minnesota, relator on certiorari, contests the award of benefits of the Workers' Compensation Court of Appeals to respondent, Janet M. Aker (hereafter petitioner), widow of decedent, James A. Aker (hereafter employee), an employee of the Department of Natural Resources. The sole issue is whether the evidence sustains the court of appeals' finding that the employee's fatal myocardial infarction was work related. Holding that it does, we affirm.

Employee began his adult employment career with the Department of Natural Resources and remained so employed until his death on August 28, 1976, at 46 years of age. Employee's work entailed a wide variety of duties in the nature of law enforcement and physical exertion, work primarily done outdoors.

On August 13, 1976, employee took part in an investigation of the deaths of two campers at a campsite in the Boundary Waters Canoe Area. This activity entailed travel by motorboat, a nonphysical portage, a hike into the woods, and removal of two badly decomposed bodies from the camp-

site.[1] When he returned home later that evening, employee looked pale, and he told petitioner about the ordeal of removing the bodies.

The next morning, August 14, employee again appeared pale and tired. According to petitioner, employee "did not look good." Later that morning, employee and his family drove to a wedding in another town, arriving early in the afternoon. Petitioner testified that during the afternoon of August 14, the employee was "quite pale and there were many guests in the house at this time, and others remarked that Jim did not look well, and then he related some of the incidents of the day before. He [also] complained of indigestion * * *." Petitioner's testimony was corroborated by employee's sister-in-law, a registered nurse, who wrote a statement used at the hearing indicating that employee appeared tired on August 14, had an ashen complexion, and extensively complained about a feeling of "heartburn."

Employee returned to his normal work activities as a game warden on August 17 and on the next day took a short vacation with his family, including a camping trip. During the period between August 14 and August 28, employee exhibited no noticeable health problems and engaged in all of his regular work activities.

On the morning of August 28, 1976, employee appeared normal and healthy. During the morning, employee and his supervisor, Donald E. Fultz, checked out a report that a deer had been hit by an automobile. While awaiting the arrival of the deer carcass, employee continually placed his hand inside his shirt, on his chest. Shortly thereafter, a truck arrived with the carcass. Employee climbed up on the truck, repositioned the deer carcass, examined it, and then left the scene.

Later, when employee and Fultz stopped for lunch, employee indicated to Fultz that he did not feel well. Employee then decided to go home. After he arrived home, his physical condition deteriorated, and he complained of nausea, indigestion, heartburn, and stomach pains. Petitioner rushed employee to a hospital, but he was pronounced dead on arrival.

Dr. D. J. Blomberg, a pathology specialist, conducted the autopsy on employee, and his autopsy report was admitted into evidence. In his report, Dr. Blomberg determined the cause of death to be an acute myocardial infarction in the posterior wall of the left ventricle, with occlusion of the coronary artery. Dr. Blomberg also indicated a finding of moderately severe arteriosclerotic cardiovascular disease, as well as a subacute myocardial infarction in the left ventricle. In effect, Dr. Blomberg recorded in his report a finding that employee had suffered two myocardial infarctions at two different times, one on the periphery of the other.

The critical evidence is that of Dr. Blomberg for petitioner and Dr. Thomas Arnold for relator. Dr. Blomberg's opinion was that employee's death was related to his employment with relator. He testified that the cause of employee's death was an extension of a myocardial infarction that occurred approximately 2 to 3 weeks before the date of death. He further testified that the date of August 13 or August 14 was the likely date because the symptoms employee suffered at that time were consistent with a myocardial infarction and because employee was subjected at that time to an extreme amount of emotional stress, i. e., observing and handling the badly decomposed bodies.

Dr. Thomas Arnold, an internist, opined to the contrary that there was no causal relationship between employee's death and his employment activities. He agreed with Dr. Blomberg's finding that employee suffered two myocardial infarctions, but he stated that based upon the available data there was no way of estimating when the initial myocardial infarction occurred. Essentially, Dr. Arnold was of the opinion that employee's death was the result of the

---

1. This task involved picking up the bodies, wrapping them in air mattresses, and transporting them miles by canoe.

natural predictable progression of an underlying arteriosclerotic disease. He stated the underlying disease was progressing irrespective of what the employee was doing and, if there had been an unusual degree of physical or emotional stress attributable to the events of August 13, 1976, there would have been more immediate manifestations, such as pain and shortness of breath. To Dr. Arnold, the lack of these types of symptoms demonstrated no infarction occurred during this period and that the events of August 13 did not contribute to employee's underlying disease.

■ The gravamen of this case is whether employee's myocardial infarctions arose out of and in the course of employment, a condition to recovery of workers' compensation benefits mandated by Minn.St. 176.011, subd. 16. The parties agree that petitioner's burden of proof was met if the stress and strain of employee's work on August 13, 1976, were shown to be medically related to employee's first infarction.[2] There is no requirement that work-related stress be the sole cause of an infarction; it is sufficient for the stress to be a substantial contributing factor. *Wever v. Farmhand, Inc.,* 309 Minn. 42, 243 N.W.2d 37 (1976); *Forseen v. Tire Retread Co.,* 271 Minn. 399, 136 N.W.2d 75 (1965). The medical experts disagreed on whether employee's myocardial infarcts were work related. The court of appeals, accepting the opinion of Dr. Blomberg, concluded that the mental and emotional stress experienced by employee on August 13, 1976, in moving two decomposed bodies out of the Boundary Waters Canoe Area was a substantial contributing cause of employee's death. We have repeatedly held that such a finding of fact from conflicting expert testimony will not be disturbed unless a consideration of all the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to that of the compensation court. *Zingelman v. Wis-*

*niewski,* 265 N.W.2d 653 (Minn.1978); *Saholt v. Northwest Airlines, Inc.,* 290 Minn. 293, 188 N.W.2d 772 (1971).

■ A finding of fact will not be sustained if it is based on conjectural expert testimony. *Zappa v. Charles Mfg. Co.,* 260 Minn. 217, 109 N.W.2d 420, 21 W.C.D. 459 (1961); *Hiber v. City of St. Paul,* 219 Minn. 87, 16 N.W.2d 878, 13 W.C.D. 302 (1944). Relator argues Dr. Blomberg's testimony was conjectural because it was based upon inadequate factual foundation. Relator's main argument is that there was insufficient evidence that the removal of the two decomposed bodies on August 13, 1976, represented an extreme amount of emotional or mental stress for employee and insufficient evidence of symptoms of a myocardial infarction on either August 13 or August 14.

■ There is adequate evidence employee was subjected to an extreme amount of emotional and mental distress by the events of August 13, 1976. Petitioner used the term "ordeal" to describe employee's description to her during the evening of August 13 of his removal of the two decomposed bodies, and she also testified that he appeared pale and tired that night when he returned home. There was evidence that the next day at the wedding he talked to other people about what had happened on August 13, at the same time that people were commenting on his unhealthy appearance. Most significantly, Fultz testified that on August 28, the date of employee's second and fatal infarction, he had asked employee about the August 13 incident and employee said that it was "the damndest thing he ever had to do in his years as an Officer." We think it not unreasonable for a trier of fact to have believed, in the absence of evidence to the contrary, that an ordinary person would have found picking up the badly decomposed bodies of the campers, wrapping them in air mattresses,

2. Even though employee's second and fatal myocardial infarction of August 28, 1976, occurred when he was at home, if it was established that the first myocardial infarction was work related, the requisite causation was es-

tablished because the second infarction occurred in the vicinity of the first infarction and the first infarction would have weakened employee's heart.

and transporting them miles by canoe to be revolting and emotionally distressing.

Likewise, there is adequate evidence employee manifested symptoms of a myocardial infarction on either August 13 or August 14. The only evidence pertaining to August 13 was that employee looked tired and pale when he returned to his home that night. However, there was substantially more evidence relating to August 14. Petitioner testified that employee again looked pale and tired on the morning of August 14. Employee went to a wedding that day, and there was evidence from two different sources that employee did not look well and extensively complained of indigestion. Employee's complaint of indigestion was important because he complained of indigestion and similar pains on August 28, during his fatal myocardial infarction, and the evidence indicated he had never complained about indigestion in the past. Likewise, it was significant that during the period at the wedding when employee was complaining of indigestion and people were commenting on his unhealthy appearance, he was telling people about his experience on August 13. While the symptoms manifested on August 14 were somewhat removed in time from the emotionally stressful events of August 13, the length of time was not so implausible as to demonstrate employee could not have suffered a myocardial infarction during this time because of the emotional and mental stress from removing the two decomposed bodies, especially because there was definite evidence that the events of August 13 were on employee's mind during the day of August 14.

Based on the record as a whole, there is adequate evidence that removal of the two decomposed bodies on August 13, 1976, subjected employee to an extreme amount of mental and emotional distress and that employee manifested symptoms of a myocardial infarction on either August 13 or August 14. The medical testimony by petitioner's expert was, in our view, based upon adequate factual foundation and was not conjectural. We accordingly will not disturb the court of appeals' factual finding that moving and transporting the two decomposed bodies was a substantial contributing cause of employee's fatal myocardial infarction.

Affirmed.